Harlan J. Jost, Appellant, v. Diederich J. Cornelius et al., Trading as Washington Garage et al., Appellees.

Gen. No. 10,237.

Opinion filed April 20, 1948. Rehearing denied May 27, 1948. Released for publication May 27, 1948.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appellant.

WILBUR D. DERSCH, of Peoria, for appellees; LONDON G. MIDDLETON, of Peoria, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Diederich J. Cornelius and Otto H. Cornelius were doing business in the City of Peoria, Illinois, under the name of Washington Garage. They were interested in building a new garage, and got into communication with Harlan J. Jost of Pekin, Illinois. Jost was a general contractor whose business it was to erect such buildings, as was desired by the Cornelius Brothers. Diederich and Otto Cornelius entered into an agreement with Jost to build their new garage. The building was started and some forty thousand dollars had been paid to Jost for its construction, when a dispute arose as to the contract between the parties.

Jost filed a suit in the circuit court of Peoria county, against Diederich J. Cornelius and Otto H. Cornelius doing business as Washington Garage and Anna K. Cornelius who is the wife of the defendant, Diederich J. Cornelius, and Luella M. Cornelius, who is the wife of Otto H. Cornelius. He claimed that there was due him from the defendants, the sum of $15,807.10, and asked to have a mechanic's lien in his favor for this amount. He alleged in his petition that he had an oral contract with the defendants whereby he was to build the garage on a "cost-plus," contract. He was to receive ten per cent for overseeing the work, but his commission was not to exceed $4,000. The defendants filed an answer and denied that there was an oral contract between the parties, but claimed there was a valid written contract whereby the plaintiff agreed to build the garage for $40,000. A copy of the contract was attached to the answer. The case was referred to the master in chancery. He heard the evidence, and recommended to the court that the claim for mechanic's lien be denied.

The plaintiff filed exceptions to the master's report, and on a hearing of the same, the court overruled the exceptions and entered a decree finding that the plaintiff was not entitled to a mechanic's lien. It is from this decree that the appeal is prosecuted to this court.

The appellees were having trouble to raise money to build the garage. The appellant went with them several places to get the money, but was unsuccessful. Finally, the defendants went to the First National Bank of Peoria who agreed to loan the appellees $40,000, for the purpose of erecting a garage. Jost went with Diederich J. Cornelius to the bank for the purpose of making arrangements for the money. It is claimed by Jost that Diederich Cornelius, while on the way to the bank, presented the contract to him for the erection of a garage for the sum of $40,000; that Jost told Cornelius that the garage could not be built for $40,000 and asked him how he intended to raise the balance of the money. To which Cornelius replied: "That he and his brother had the agency for a popular truck and that they would make forty per cent commission on the sales of the trucks, which retailed at around $6,000 apiece, and that way they could take care of the financing of the garage;" that he told Jost that it was necessary to have a written contract before the bank would let them have the money, whereas, between them the oral contract would prevail, on a "cost-plus," basis. Cornelius denies that he said that the "cost-plus," contract would prevail over the written contract. Jost told the banker that he had signed the contract, and the loan was approved.

After the loan had been promised, Diederich Cornelius and Jost went before the building inspector of the City of Peoria, and applied for a permit to build the garage to cost $40,000. The building inspector told them that he would not issue such permit for the size of the garage contemplated as it could not be built for

$40,000. After considerable persuasion, a permit was authorized to build a garage costing $50,000.

The appellees in their brief, state: ''The issue is purely one of fact. The appellees agree that the single question in this case is whether the true agreement between the parties was the oral 'cost-plus,' contract, as the appellant contends, or the written 'fixed-maximum,' document relied upon by the appellees.'' The appellant agrees that this is a correct statement of the issues involved, and claim that there are many facts and circumstances in evidence that conclusively show that the written contract was never intended to be binding upon the parties to the litigation.

The appellees contend that the appellant is trying to vary the terms of a written instrument by oral evidence, which cannot be done. The appellant replies that he is not trying to vary the terms of a written contract, but to show that it was never intended to be a binding valid contract, but was signed by the parties solely for the purpose of procuring a loan at the bank, so as to enable the defendants to start the construction of the garage. It should be noted that the plaintiff, in his complaint, admits that any lien that he may have on the premises is subordinate to the lien of the First National Bank of Peoria for $40,000, as he helped the defendants procure the loan. What actually happened between the parties, rests largely upon the testimony of the plaintiff, and the defendant, Diederich Cornelius. They differ widely of what was said relative to the signing of the contract, and the oral ''cost-plus,'' agreement.

██ The plaintiff was permitted to introduce oral evidence to sustain his contention that the written contract was never intended to be a valid and existing contract between the parties. It is claimed by the appellees that this was an attempt to vary the written agreement, and therefore, the evidence was improper. The plaintiff, in this action, was not attempting to

modify, or change the written agreement, but was attempting to show that it was not binding, as between the parties, and under such circumstances, oral evidence is proper to show what the real contract was between them. This court had a similar question presented to us in the case of *Haugens v. Foster,* 320 Ill. App. 212. On page 218 of the opinion, we use this language: "Except the testimony and the affidavit of appellee that Mr. Crabtree said the creditor's statement was a mere matter of form, his other testimony and the other matters stated in his counter affidavit were undisputed. We think the trial court erred in excluding appellee's evidence of his conversation with Mr. Crabtree. This testimony was not an attempt to vary the terms of a written instrument, but rather to show that by reason of the circumstances under which the creditor's statement was signed, the creditor's statement was, in legal effect, no agreement at all. It has been repeatedly held that parol evidence is admissible for that purpose. (*Black v. Wabash, St. L. & P. R. Co.,* 111 Ill. 351, 361; *Wabash R. Co. v. Thomas,* 222 Ill. 337; *Illinois Match Co. v. Chicago, R. I. & P. R. Co.,* 250 Ill. 396; *Toombs v. Lewis,* 362 Ill. 181, 187, 188; *Lennon v. Goodspeed,* 89 Ill. 438)." The court did not err in admitting this oral testimony.

This contract for the erection of the garage was entered into on October 1945. The evidence shows that at that time, maximum price construction contracts, were not being entered into by contractors, as building material was scarce and prices both for materials and labor were very uncertain.

It is claimed by the appellant that at the time the written contract was entered into, the plans and specifications for the building had not been drawn, and that he did not know sufficiently the contents, or the amount involved, to make an intelligent maximum bid for such a building. There is very little, if any, dispute in regard to the plaintiff's lack of knowledge, of what the

plans and specifications were for this building at the time the written contract was signed.

It is well established by the evidence that at the time the written contract was signed, the plaintiff had no estimates of cost for material, labor or subcontractors. The plaintiff had been a general contractor for quite a number of years, but did only brick and concrete work with his men and equipment. The complete building included carpenter work, plumbing, heating, glazing, painting, roofing, insulating and many other kinds of work that necessarily would have to be done under subcontracts. Article 10 of the written agreement provides, ''that all portions of the work that the contractors' organization has not been accustomed to perform, or that the owner may direct, shall be executed under separate (sic) contracts let by the contractor.'' This is claimed by the appellant to conclusively show that it was never intended for the written contract to prevail, but that the agreement was to be a ''cost-plus,'' contract.

It is next contended that the defendants bought materials, let subcontracts and actually did some of the work themselves without consulting the contractor. At about the time the written contract was signed, the appellees hired an excavator, and put him to work digging a basement for the garage. The contract price for the excavation was considerably in excess of the ordinary price, charged per cubic yard. The defendants bought lumber, purchased steel sash, and hired a painter. They bought a boiler and stoker. They contracted for the construction of roof trusses in the amount of approximately $2,000. There is some dispute as to who hired the electricians, and the plumbers. The defendants hired some 2x12s ripped down to 2x10s and took the 2x2s to their home. These circumstances are not corroborative of the defendants' contention that they were relying upon the written contract.

Appellant also claims that changes from the plans and specifications were indiscriminately made without

consultation with the architect, without any writing, and without any determination, or agreement as to the increase, or decrease of costs. Article two of the written agreement provides as follows: "The Owner, through the Architect, may from time to time, by written instructions or drawings issued to the Contractor, make changes in the above-named Drawings and Specifications, issue additional instructions, require additional work or direct the omission of work previously ordered, and the provisions of this contract shall apply to all such changes, modifications and additions with the same effect as if they were embodied in the original Drawings and Specifications. The increased or decreased cost of all such changes shall be determined and reduced to writing before the Contractor shall proceed to carry out any changes on the above-named Drawings and Specifications."

The record clearly shows that there were numerous changes made in the plans and specifications, and that in only one instance, was the architect consulted, at which time he directed a revised sheet for that change. One of these changes was for higher priced cement, ordered by the defendants, because it dried more quickly than the kind originally specified.

As before stated, when the defendants went to the building commissioner's office to get a permit to build a garage, the architect in that office told them that the building could not be built for less than sixty-five or seventy thousand dollars, and refused to grant a permit for $40,000. After argument and persuasion, they were given a permit to build a $50,000 garage, which they now claim they had a binding and written contract to build for $40,000.

George Poppo Wearda was the architect employed to draw the plans and specifications for this garage. At the hearing of the case, he testified that he knew very little in regard to the contract between appellant and the defendants, but so far as he knew, there was no contract between the plaintiff and the defendants ex-

cept the written one. However, his testimony is impeached by Mr. James R. Powers, a practicing attorney, at Pekin, Illinois, whom Mr. Jost had gone to see, relative to the difficulty between himself and the Cornelius Brothers. Mr. Wearda was present and told Mr. Powers that the Cornelius Brothers knew that the building would cost more than $40,000, and that the plaintiff was to have a commission of $4,000, no matter what the building cost, and they kept that fact from the bank, as they expected to get trucks to sell to make up the difference between the $40,000, and the actual cost of the building, and that the plaintiff went along with the defendants, and was trying to be a good fellow. At the time of this conversation in Mr. Power's office, it was recorded on a dictaphone, and Mr. Powers had a transcription from the same.

There is practically no dispute as to the things enumerated that the defendants did, relative to the signing of the written contract, or the changes in plans, buying material and entering into contracts with subcontractors, and other changes, as claimed by the appellant. Probably any one of these transactions would not be sufficient to overcome the rule, that to show a written instrument is not binding upon the parties when it is duly signed, and executed, that it must be shown by clear and convincing proof. Considering all of these items, as disclosed by the evidence, we find that it preponderates in favor of the appellant that the written instrument was not a valid and existing contract between the parties, but the real contract was, to build this garage on a "cost-plus," basis.

It is our conclusion that under the evidence in this case, the appellant, Jost, is entitled to a mechanic's lien on the premises in question. The decree of the trial court is hereby reversed and the cause remanded.

*Reversed and remanded.*