**INTERNATIONAL MARKETING, LIMITED, Plaintiff–Appellant,**

v.

**ARCHER–DANIELS–MIDLAND COMPANY, INC., and Swift–Eckrich, Inc., Defendants–Appellees.**

No. 98–3461.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1999.

Decided Sept. 23, 1999.

John P. Manning (argued), Beaverton, OR, for Plaintiff–Appellant.

Leslie D. Locke (argued), Ross & Hardies, Chicago, IL, Chicago, IL, David L. Kabat, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Jacob B. Tanzer, Ball, Janik & Novack, Portland, OR, for Defendant–Appellee Archer–Daniels–Midland Company.

David L. Kabat, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Gregory R. Mowe, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for Defendant–Appellee Swift–Eckrich.

Before COFFEY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

On August 7, 1997, International Marketing, Limited ("IML") filed a complaint in Oregon state court seeking over $30 million in damages from Archer–Daniels–Midland Company ("ADM") and Swift–Eckrich ("Swift"). Preferring a federal forum and taking advantage of the diversity of citizenship between the parties, ADM and Swift removed the case to federal court. There, on April 10, 1998, a magistrate judge sitting for the District Court for the District of Oregon dismissed the complaint in its entirety for failure to state a claim. In the same order, the court granted IML leave to amend some of the allegations. Last, at the defendants' request, the court transferred venue to the Northern District of Illinois under the authority of 28 U.S.C. § 1404(a).

When the case arrived in Illinois, IML decided to forgo its opportunity to amend the complaint and instead to pursue an immediate appeal, because the claims that were most important to it had been dismissed with prejudice. In order to do so, it had to secure a final judgment, since interlocutory appeals are normally forbidden. IML therefore asked the district court to dismiss all of its claims with prejudice. (Our recent decision in *JTC Petroleum Co. v. Piasa Motor Fuels*, 190 F.3d 775 (7th Cir.1999), makes it clear that this step was necessary to secure appellate jurisdiction under 28 U.S.C. § 1291. See *id.* at 776.) The district judge obliged and entered its final judgment in the defendants' favor on September 3, 1998.

Of course, a final judgment is just that. IML's strategic decision meant that its case can be resuscitated only if it is able to convince this court that it had in fact properly stated one or more of its claims, in the form they took before the district court in the unamended complaint. Taking an immediate appeal was thus a calculated risk, at least if IML thought that some of the less favored claims were nonetheless salvageable by amendment. But this is the way it chose to litigate, and its decision has helped to bring a potentially sprawling case to a speedy conclusion. We affirm.

I

Because this appeal tests the sufficiency of a complaint, we relate the facts as we find them there. *Kaplan v. Shure Bros.*, 153 F.3d 413, 418 (7th Cir.1998). IML is an international commodities broker. In 1995 and 1996, it entered into a series of agreements with overseas and domestic buyers to supply them with Butterplus, a butter substitute, and other commodities such as corn oil and canned meats. After making the first such commitment in March 1995, IML contracted with Swift to supply the goods. Swift, in turn, arranged for ADM actually to produce the commodities. In July 1995, IML realized that ADM was the producer and began dealing with it directly. Swift remained in the

picture because, according to IML, Swift and ADM acted as partners in all of their dealings with IML.

The heart of IML's complaint is its allegation that Swift and ADM breached a series of oral supply agreements. IML recounts seven transactions between itself and buyers who wanted to purchase the commodities that it had planned on procuring from ADM and Swift. In any event, ADM and Swift did not deliver the goods. That would have been bad enough for IML, because in theory this nondelivery would have required it to line up alternate suppliers on the open market. But ADM and Swift took matters a step further. In some cases, they initiated direct contact with IML's customers, negotiated their own deals, and circumvented IML's brokering function altogether.

From this set of basic facts, IML has distilled a number of different legal theories under which it claims a right to recover. Its complaint alleges breach of oral contract and fraud for each transaction, insofar as the defendants failed to deliver the goods while assuring IML that they would. It pleads quantum meruit and detrimental reliance as alternative, quasi-contractual theories of recovery. Where ADM and Swift entered into their own independent relationships with IML customers, IML alleges the economic torts of interference with contract and interference with business relations. Finally, IML points to written non-circumvention contracts it had entered with ADM and Swift in regard to some of its clients and accuses the defendants of breaching those contracts as well.

Although the supply agreements IML hopes to enforce were wholly oral, IML attached a number of documents to its complaint, among which are two written supply contracts between itself and Swift, together covering the period from May 31, 1995 through December 31, 1996, and a third written supply contract between itself and ADM for the period from August 19, 1995 through September 30, 1996.

These contracts contain some boilerplate terms that are virtually identical. For example, they each require that payment must be made through a letter of credit, drawn in U.S. dollars through an approved bank and confirmed by Bank of America's Chicago office. Likewise, they each contain the following integration clause: "Entire Agreement: This Contract supercedes any prior agreement, negotiations and discussion between Buyer and Seller and cannot be altered or amended except by agreement in writing signed by the duly authorized representatives of the parties hereto."

These documents pose an obvious problem for IML. They look and sound like contracts between the parties on the precise subject matter of the alleged oral agreements. It is clear, however, that IML did not hold up its end of the bargain as outlined in the written agreements. For example, even according to its own rendition of events, IML never satisfied the payment terms regarding some of the transactions. Perhaps for that reason IML tried to rely in its complaint on its allegations of oral agreements. Realizing that it must somehow explain away the written agreements, IML added the following allegation to its complaint: "[the written contract with ADM] was signed solely in order to satisfy the legal and credit department of ADM, but the parties agreed that it (the written contract) would have no force and effect." IML does not make similar allegations regarding the written Swift contracts.

ADM and Swift moved to dismiss the complaint for failure to state a claim. After a thorough analysis of the many claims, the Oregon district court dismissed the complaint in its entirety, specifying that the dismissal of the breach of oral contract claims was to be with prejudice. IML is now appealing that order, so far as it applies to the oral contract and economic tort claims. It has also asked us to direct the district court to allow it to amend its remaining claims on remand.

## II

At this early stage in the proceedings, the only question is whether the complaint raised allegations that, if proven, would entitle the plaintiff to relief. Fed. R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This is a question of law, and as such we review it *de novo*. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir.1999). Documents attached to the complaint are incorporated into it and become part of the pleading itself. Fed.R.Civ.P. 10(c); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998).

The district court rejected IML's breach of oral contract claims on several grounds. The alleged oral agreements, it held, were unenforceable in light of the superseding written contracts. Any prior oral agreements with either defendant would be inadmissible under the parol evidence rule, while subsequent oral agreements would be barred by the contracts' requirement that modifications be made in writing. The court also rejected as a matter of law IML's effort to portray the written agreements as mere window-dressing, without legal effect. Finally, the written contracts aside, the court noted that each of the alleged oral agreements failed to satisfy the statute of frauds. We agree that the written contracts bar IML from recovering on the basis of oral agreements, and so we do not reach the statute of frauds question.

As an initial matter, we face a choice-of-law question. A federal trial court exercising its diversity jurisdiction over state law claims must generally apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The situation is slightly more complicated when a case has been transferred from one federal district to another under § 1404(a). In that circumstance, we have held that the transfer leaves the law, including choice-of-law rules, unaffected. See *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir.1993), citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). In this case, that means that the governing choice-of-law rules are those that the Oregon district court would have applied—which in turn are the choice-of-law rules of the state of Oregon.

Oregon instructs its courts to refrain from choosing one state's laws over another unless there is a conflict among the laws of the competing forums. *Lilienthal v. Kaufman*, 239 Or. 1, 395 P.2d 543, 544 (Or.1964). In this case, the Oregon court noted that both Illinois and Oregon have a connection to the controversy, but it found it unnecessary to decide which state's law governed the supply agreements because the outcome would be the same in either case. To test its conclusion, we too will consider the legal effect of the oral agreements under the laws of both states.

Both Illinois and Oregon have largely adopted the Uniform Commercial Code ("UCC"), which governs contracts for the sale of goods over $500. Under the UCC's parol evidence rule, evidence of prior agreements or contemporaneous oral agreements is inadmissible to vary or contradict the terms of an integrated written contract. Or.Rev.Stat. § 72.2020; 810 ILCS 5/2–202. A contract is integrated if the parties intended it to be a final and complete expression of their agreement. *Abercrombie v. Hayden Corp.*, 320 Or. 279, 883 P.2d 845, 850 (Or.1994); *J & B Steel Contractors, Inc. v. Iber & Sons, Inc.*, 246 Ill.App.3d 523, 187 Ill.Dec. 197, 617 N.E.2d 405, 409–10 (Ill.App.Ct.1993), aff'd, 162 Ill.2d 265, 205 Ill.Dec. 98, 642 N.E.2d 1215 (Ill.1994).

IML argues that the parol evidence rule can never defeat a claim at the Rule 12(b)(6) stage, because identifying the parties' intent requires fact-finding, a

judicial function that has no place at this early stage in the proceedings. While it is a truism that fact-finding has no part in resolving a Rule 12(b)(6) motion, *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1059 (7th Cir.1999), that is not what the district court did. Instead, the court simply took IML's complaint at face value, as it was required to do. IML made no allegation to counter the plain language of its written contracts with Swift, which IML itself attached to the complaint. Those contracts evidenced integration on their face: "This Contract supercedes any prior agreement, negotiations and discussion between Buyer and Seller. . . ."

When IML alleged that its intent was inconsistent with the written word of its contract with ADM, the court similarly took IML at its word and explored the legal ramifications of this "sham" agreement. It noted that, under Oregon law, allegations of a sham contract cannot shake the effect of an integration clause as between the parties. *Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co.*, 242 Or. 407, 408 P.2d 198, 201–02 (Or.1965). It again restricted itself to a legal rather than factual analysis when it concluded that Illinois would take the same position, at least given the facts as alleged by IML. Accordingly, the court's conclusions, though adverse to IML, did not impermissibly rest on fact-finding.

IML next argues that the court came to the wrong legal conclusion about Illinois law. We disagree. It may be true that Illinois, like a number of other jurisdictions, permits parol evidence for the narrow purpose of showing that the parties to an alleged agreement did not intend to be bound by it. See, *e.g., Jost v. Cornelius*, 334 Ill.App. 279, 79 N.E.2d 310 (Ill.App.Ct. 1948). But the allegation in Jost was that neither party meant to be bound; there, the two parties cooked up a sham contract to fool a bank into loaning them some money. IML is making a very different claim—one that on its face concedes that at least certain spokespersons for one of the parties to the contract (*i.e.* the legal and credit departments of ADM) did intend to be bound. To the extent there is a "sham" exception in Illinois at all, it does not cover this situation. Essentially, IML alleges that it, with the connivance of two other employees of ADM (John D. Rice, a vice-president at ADM, and Donald R. Black, a sales manager) sought to perpetrate a fraud on ADM's credit and legal departments by signing a contract the disloyal employees intended to ignore. It offers no reason why Rice and Black were the legal equivalent of ADM for this purpose, nor does it seem to be concerned about the fact that ADM is an entity with a legal personality apart from that of its employees. The facts it has pleaded, even if true, suggest no principled way for a court to decide which faction of ADM spoke for the company. In such a situation, we do not hesitate to hold IML to its contract. IML admits that it knew the terms of the contract and signed it voluntarily. To allow IML to escape its effects based on unsupported allegations that contradict the clear language of the contract would be to open the doors of the courthouse to anyone who entered into a contract but who did not wish to be bound by it. Worse, it would permit IML to profit from its own wrongdoing. In light of these considerations, IML's allegations of a sham contract cannot be credited as a matter of law.

IML is thus bound by its written contracts with the defendants, and each of these contracts has an effective integration clause. This means that IML may not offer proof of any prior or contemporaneous oral agreements. Nor can it stake its claim on any subsequent oral agreements, because the contracts each provide that their terms "cannot be altered or amended except by agreement in writing signed by the duly authorized representatives of the parties hereto." Such clauses are enforceable in both Oregon and Illinois. Or.Rev. Stat. 72.2090; 810 ILCS 5/2–209(2). All of the alleged oral agreements are therefore

unenforceable, and the district court correctly dismissed IML's breach of contract claims based on those agreements.

## III

IML also appeals the court's dismissal of its allegations of tortious interference with business relations and tortious interference with contract. According to IML, ADM and Swift repeatedly and intentionally induced IML's customers to circumvent IML and deal directly with them by informing those customers that IML did not have a valid supply contract.

Again we face the threshold choice-of-law question. After noting that the relevant tort law differs in Oregon and Illinois, the court below concluded that Illinois law would govern the tort claims. Neither party has appealed from this determination, and so we too examine these claims using Illinois law.

Interference with contract and interference with business relations (sometimes called prospective economic advantage) are related torts. In Illinois, a plaintiff can recover for interference with existing contractual rights by proving "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 676 (Ill.1989). Where the plaintiff's economic expectancy has not yet solidified into a contractual relationship, she can still recover in tort if she shows "(1) [her] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business rela-

tionship; and (4) damages to the plaintiff resulting from such interference." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 370 (Ill. 1998).

There are numerous privileges that serve as a complete defense to each tort. *Herman v. Prudence Mut. Cas. Co.*, 41 Ill.2d 468, 244 N.E.2d 809, 812 (Ill. 1969). One such defense is dispositive for the claims based on intentional interference with business relations: competition. See *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir.1999) ("[C]ompetition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort . . . .") and cases cited there. In Illinois, a competitor is ineligible for the competition defense only if its conduct is motivated solely by spite or ill will. *Strosberg v. Brauvin Realty Servs., Inc.*, 295 Ill.App.3d 17, 229 Ill.Dec. 361, 691 N.E.2d 834, 846 n. 2 (Ill. App.Ct.1998). Although normally, in federal court, the existence of this kind of privilege will be an affirmative defense for the defendants to raise, in some cases a complaint so clearly reveals the existence of the defense that judgment on the pleadings is possible. This principle lies behind the cases in which courts have dismissed actions where the complaint establishes the defense of the statute of limitations, which Rule 8(c) designates as an affirmative defense. See, *e.g., Baker v. F & F Investment*, 420 F.2d 1191, 1198 (7th Cir. 1970). See generally 5 Wright & Miller, Federal Practice and Procedure, § 1277, at 468–71 (2d ed.1990).

The court dismissed IML's interference with contract claims because IML failed to allege a critical element, namely that the third parties, IML's customers, breached their contracts with it. IML argues that it did make such an allegation and relies on the following language, which it repeated for every interference with contract claim: "Defendant ADM inten-

tionally and knowingly interfered with the aforesaid contract by inducing [IML's customer] to breach its contract with plaintiff and deal directly with it." Literally, this language addresses only ADM's allegedly wrongful inducement; it stops short of saying that the customers did in fact breach their contracts. This may seem to be a minor defect or a hypertechnical reading inconsistent with the spirit of Rule 8, which is probably why the court dismissed these claims without prejudice and granted IML leave to file an amended complaint. And it is easy to see how IML might have cured the deficiency in its pleadings with some simple redrafting. But IML did not do so. Instead, IML sought an immediate appeal and asked the district court to dismiss these claims with prejudice. Unfortunately for IML, we agree that the claim is defective, and its pursuit of a final judgment has cost it its ability to amend.

If the language really does allege only inducement and not actual breach, it would be a close question whether the complaint nonetheless satisfied basic notice pleading standards. Giving IML the benefit of the doubt, and assuming that the goals of notice were met, the claims are still inadequate. They are premised on the notion that ADM and Swift acted wrongfully when they informed IML's customers that IML did not have a valid supply contract. But given that the written agreements were, as a matter of law, the only valid agreements between IML and the defendants, and given that IML by its own admissions apparently failed to meet the payment terms that would have triggered the defendants' duty to perform, neither ADM nor Swift acted wrongfully in informing IML's customers of the truth: neither defendant had a binding supply agreement with IML.

█ Nor do IML's claims based on interference with business relationships survive scrutiny. In those claims, which IML repeated verbatim in regard to its different customers, IML alleged that "[d]efendants interfered with the aforesaid business relationship of plaintiff with an improper motive by inducing [IML's customer] to break off it's [sic] business relationship so that defendant[s] could deal directly with [the customer]." The court dismissed these claims because ADM's and Swift's competitive motive—a privilege providing a complete defense—appears on the face of the complaint. As noted above, this defense can be counteracted at the pleading stage by allegations of ill will or spite, motivations that defeat the competitor's privilege, but IML makes no such allegations. Its invocation of an "improper motive" is too broad and ambiguous for us to read it as "ill will" or "spite," especially where nothing else in the complaint supplies a reason to believe that this is the sort of improper motive IML has in mind.

IML argues that the court misread its complaint and points us to the following allegations, which it also repeated in regard to different customers: "Defendant ADM's interference with contract was done with an improper motive by falsely representing to [IML's customer] that plaintiff did not have a direct contract for supply of [commodity]...." We agree that this allegation, because it does not reference a competitive motivation, would be adequate to charge the motive required for tortious interference with business relations under the liberal federal rules of notice pleading. See *Harrell v. Cook*, 169 F.3d 428, 429 (7th Cir.1999) (noting that pleadings should be construed liberally on a motion to dismiss). Unfortunately, IML made these allegations only with respect to its interference with contract claims. It did not reallege or incorporate these statements by reference in regard to its separate business relations claims. Even if now, with clear 20–20 hindsight, IML wants to allege that these representations were made and they were false (difficult though that may be given the status of the oral agreements), it did not do so when it had the chance. As it stands, the complaint does not state a claim for tortious interference.

## IV

 Finally, we reject IML's request to allow it to amend those claims that had originally been dismissed with leave to amend. Even if we were to remand any of the claims on which IML has staked its appeal, we would not allow IML another run at its remaining claims. That would only serve to defeat the limits Congress has set on our interlocutory jurisdiction in 28 U.S.C. § 1292 and the complementary final judgment requirement of 28 U.S.C. § 1291. As we have explained, litigants gamble when they ask a district court to dismiss live claims with prejudice so that they can pursue an immediate appeal. See *Boland v. Engle*, 113 F.3d 706, 714 (7th Cir.1997). IML must live with the consequences of the final judgment it requested.

Nor will we breathe new life into any of those claims on the merits. Even if the court was mistaken to dismiss IML's breach of non-circumvention contract, fraud, quantum meruit, and detrimental reliance claims, IML has abandoned them by failing to argue them here. *Duncan v. State of Wisconsin Dep't of Health & Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999).

IML first filed its complaint in state court. Oregon, like Illinois, *cf. Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992), is a code pleading state. Complaints in Oregon must contain a "plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition." See Or. R. Civ. P. 18(A). In contrast, the federal rules follow the notice pleading approach, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). The only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process. IML's complaint could not have deviated further from the federal standard (and even the Oregon courts might have found it prolix). Measuring almost two inches thick, it contains 40 pages of allegations and 29 attached exhibits. Some of IML's lengthy recitals and extra documents held ADM's and Swift's defenses. The court gave IML leave to amend at least some of its allegations, and it may have been well advised to resubmit less rather than more. But it chose to stand on its original complaint. To put it succinctly, IML pleaded itself out of court, and then (though in the end it probably made no difference), it gave up its opportunity to fix its mistake.

AFFIRMED.