(No. 67594.—

(Nos. 67617, 67630.—

HPI HEALTH CARE SERVICES, INC., Appellee, v. MT. VERNON HOSPITAL, INC., *et al.* (Hospital Management Associates, Inc., Appellant).—HPI HEALTH CARE SERVICES, INC., Appellee, v. MT. VERNON HOSPITAL, INC., *et al.* (Centerre Trust Company of St. Louis, Appellant).—HPI HEALTH CARE SERVICES, INC., Appellee, v. MT. VERNON HOSPITAL, INC., *et al.* (National Medical Health Care Services, Inc., *et al.*, Appellants).

*Opinion filed September 27, 1989.*

148

John B. Gunn, James C. Cook and Lisa M. Pennock, of Walker & Williams, P.C., of Belleville, for appellant Hospital Management Associates, Inc.

Joseph J. Trad and Robert J. Will, of Lewis & Rice, of St. Louis, Missouri, for appellant Centerre Trust Company of St. Louis.

Ransom P. Wuller and Ted Harvey, Jr., of Freeark, Harvey, Mendillo & Dennis, of Belleville, for appellants National Medical Health Care Services, Inc., and National Medical Enterprises, Inc.

Arnstein & Lehr, of Chicago, and McRoberts, Sheppard, Wimmer & Stiehl, P.C., of Belleville (Arthur L. Klein, John T. Wagener and William D. Stiehl, Jr., of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

Appellee, HPI Health Care Services, Inc. (HPI), appealed from that portion of a judgment of the circuit court of Jefferson County which dismissed counts IV, VI, VII and VIII of HPI's second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill.

Rev. Stat. 1985, ch. 110, par. 2—615) for failure to state a cause of action. In a separate aspect of the judgment which is not at issue here, the circuit court also entered a default judgment against Mt. Vernon Hospital, Inc. (Mt. Vernon), a now-defunct hospital. The appellate court reversed the trial court's dismissal of the four counts of the complaint and remanded. (172 Ill. App. 3d 718, 720.) Appellants, Hospital Management Associates, Inc. (Hospital Management), Centerre Trust Company of St. Louis (Centerre), and National Medical Health Care Services, Inc., and National Medical Enterprises, Inc. (collectively, National Medical), filed separate petitions for leave to appeal, which we granted and subsequently consolidated (107 Ill. 2d R. 315). Since the issue before us is whether the trial court should have dismissed certain counts of HPI's second amended complaint, we must regard all well-pleaded facts in the complaint, and all reasonable inferences which arise from them, as true and correct. *Krasinski v. United Parcel Service, Inc.* (1988), 124 Ill. 2d 483, 485-86.

Before engaging in a detailed recitation of the specific facts alleged in HPI's complaint, we find it appropriate to first briefly summarize the factual background in this case. Mt. Vernon operated a hospital in Jefferson County, Illinois. Centerre is a trust company which acted as the trustee for a series of municipal bonds which had been issued to finance the facility used by Mt. Vernon as its hospital, and to whom Mt. Vernon made rental payments for its use of the hospital facility. Hospital Management and National Medical are hospital management companies which had been hired by Mt. Vernon to manage the hospital and, in particular, to collect payments owed to Mt. Vernon. From these collected funds, the management companies were to pay Mt. Vernon's creditors. HPI is a company that had a contract with Mt. Vernon to provide pharmaceutical goods and services for

the hospital. This action was initiated by HPI because Mt. Vernon failed to pay HPI for HPI's provision of these pharmaceutical goods and services.

The specific factual allegations in HPI's complaint are that on July 1, 1980, Jefferson County issued certain revenue bonds to finance the acquisition, renovation and conversion of a combined hospital/nursing-home facility. The trustee of the bonds under an "Indenture of Mortgage and Deed of Trust" (indenture) was the Centerre Trust Company of St. Louis. Around the same time, Mt. Vernon Hospital, Inc., entered into a financing agreement with Jefferson County whereby Mt. Vernon agreed to lease the hospital/nursing-home facility. Under the terms of the indenture, all rental payments made by Mt. Vernon for the facility were to be remitted directly to Centerre to be deposited into a trust fund and used to pay the principal of, and the premium and interest on, the bonds.

In August 1980, Mt. Vernon entered into an agreement with Hospital Management whereby Hospital Management agreed to provide management services for the hospital and to:

> "deposit in the Hospital's respective bank accounts *** all receipts and moneys arising from the operation of the Hospital or otherwise received by [Hospital Management] for and on behalf of the Hospital *** and shall disburse and pay the same from said accounts on behalf and in the name of the Hospital *** in such amounts and at such times as the same are required. [Hospital Management] shall be permitted to draw these funds only to pay the reasonably necessary expenses of the operation of the Hospital. [Hospital Management] shall be responsible for the payment, from [Mt. Vernon's] funds, before the payment of any other obligation of the Hospital, of such payments as are required to be made under the Lease and the Indenture, and all other contractual obligations en-

tered into with respect to the Bonds, in such amounts and at such times as the same are required."

On January 7, 1981, Mt. Vernon and HPI entered into a pharmaceutical services agreement in which Mt. Vernon agreed to pay HPI for the provision of pharmaceutical goods and services. On July 1, 1982, National Medical entered into a contract with Mt. Vernon whereby it assumed Hospital Management's responsibilities as manager of the hospital. The contract between National Medical and Mt. Vernon provided:

"In accordance with policies to be established by the Hospital, [National Medical] shall deposit all receipts and money arising from the operation of the facility or otherwise received by [National Medical] on behalf of Hospital, and shall make disbursements from the accounts on behalf of Hospital and facility in such amounts and at such times as the same are required. Signatories and approvals as to the amounts on all checks shall be in accordance with the duly adopted policy of Hospital."

Pursuant to the January 7, 1981, pharmaceutical services agreement, HPI provided Mt. Vernon with pharmaceutical goods and services for at least two years. Mt. Vernon, however, never paid HPI. Because of Mt. Vernon's failure to pay, HPI filed suit in the circuit court of Jefferson County. HPI's second amended complaint consisted of nine counts and named Mt. Vernon, Hospital Management, National Medical, and Centerre as defendants. Count I was a claim for breach of contract against Mt. Vernon. Count II was a negligence action against Hospital Management. Counts III and V sought damages under a third-party beneficiary theory from Hospital Management and National Medical for breach of contract. Count IX sought recovery from all four defendants for alleged violations of a Federal RICO statute. Counts IV, VI, VII and VIII, which are the subject of this appeal and which will be discussed in greater detail later, were as fol-

lows: counts IV and VI alleged that Hospital Management and National Medical intentionally interfered with the contract between HPI and Mt. Vernon; count VII sought recovery from Centerre based upon an unjust-enrichment theory; and count VIII sought damages from all four defendants for fraudulent misrepresentation.

Hospital Management, National Medical, and Centerre filed motions to dismiss counts II through IX of HPI's complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) for failure to state a cause of action. After hearing argument, the circuit court took the motions under advisement. On May 3, 1987, the court entered a default judgment in favor of HPI against Mt. Vernon on count I of the second amended complaint in the amount of $1,691,792.04. The circuit court then granted defendants' motions to dismiss the remaining counts of the complaint. The appellate court, with one justice dissenting (172 Ill. App. 3d at 739 (Karns, J., dissenting)), reversed the circuit court's dismissal of counts IV, VI, VII and VIII and remanded to the circuit court (172 Ill. App. 3d at 720). The appellate court did not address the circuit court's rulings which dismissed the other counts of the complaint because HPI apparently failed to argue that those rulings were in error. (172 Ill. App. 3d at 726.) We first address the circuit court's dismissal of the intentional interference with contract counts of HPI's complaint (counts IV and VI).

This court has never explicitly set out the elements of the tort of intentional interference with existing contract rights. However, it is generally recognized in Illinois that the elements of this tort are:

" '(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the

contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.' " *Prudential Insurance Co. v. Van Matre* (1987), 158 Ill. App. 3d 298, 304, quoting *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551.

The specific allegations of counts IV and VI of HPI's complaint, which are essentially the same except that count IV is directed toward Hospital Management and count VI is directed toward National Medical, are that: (1) Hospital Management (count IV) and National Medical (count VI) had entered into contracts with Mt. Vernon to provide management services for Mt. Vernon, and under the management services contracts, both management companies were obligated to deposit in Mt. Vernon's bank accounts all receipts and monies arising from the operation of the hospital, and to pay Mt. Vernon's creditors from those accounts; (2) there was a contract between HPI and Mt. Vernon whereby Mt. Vernon would pay HPI to supply pharmaceutical goods and services to Mt. Vernon, and HPI provided such goods and services to Mt. Vernon; (3) the management companies had knowledge of the pharmaceutical agreement between HPI and Mt. Vernon, and had knowledge that HPI had been providing the goods and services to Mt. Vernon; (4) the management companies intentionally paid Mt. Vernon's receipts and funds over to other creditors, and intentionally caused no payments due and owing under the pharmaceutical services agreement to be made to HPI; (5) the management companies' intentional decisions not to pay HPI were done "without legal justification and knowingly in violation of [HPI's] contractual right to said compensation," and caused Mt. Vernon to breach its pharmaceutical services agreement with HPI; (6) as a direct and proximate result of the management companies' "intentional interference with the pharma-

ceutical services agreement," HPI sustained almost $1 million in damages.

Neither party here questions whether counts IV and VI properly plead (1) the existence of a contract between HPI and Mt. Vernon; (2) the management companies' awareness of the contract; (3) the management companies' intentional inducement of a breach of the contract; (4) Mt. Vernon's subsequent breach of the contract; and (5) damages. What is in dispute is (1) whether HPI was required to plead facts alleging that the management companies' actions were unjustified and, if so, (2) whether such facts had been pled.

Whether it is a plaintiff's burden to plead lack of justification in an action for intentional interference with contract, or a defendant's burden to plead that its conduct was justified, is a question which has divided the courts in this country. (Compare *Alyeska Pipeline Service Co. v. Aurora Air Service, Inc.* (Alaska 1979), 604 P.2d 1090, 1095; *Barlow v. International Harvester Co.* (1974), 95 Idaho 881, 893, 522 P.2d 1102, 1114 (defendant has burden of proving justification), with *Top Service Body Shop, Inc. v. Allstate Insurance Co.* (1978), 283 Or. 201, 209-10, 582 P.2d 1365, 1371; *Glenn v. Point Park College* (1971), 441 Pa. 474, 479-82, 272 A.2d 895, 898-900 (plaintiff has burden of proving lack of justification).) In Illinois, this court has repeatedly stated that where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious. (See *Swager v. Couri* (1979), 77 Ill. 2d 173, 185; *H.F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 474; *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551; *Loewenthal Securities Co. v. White Paving Co.* (1932), 351 Ill. 285, 299.) The term "malicious," in the context of interference with contrac-

tual relations cases, simply means that the interference must have been intentional and without justification. (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552 n.1.) Therefore, before we can determine who has the burden of pleading justification (or a lack thereof), we must first decide whether the defendants' conduct here was protected by a privilege.

Courts will recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights. (See *Swager*, 77 Ill. 2d at 190-91; *Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 400 (and cases cited therein).) In *Swager*, 77 Ill. 2d at 189-91, *Philipsborn*, 59 Ill. 2d at 474, and *Loewenthal Securities*, 351 Ill. at 300, this court recognized a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations. The existence of the privilege was based upon this court's recognition that the duty of corporate officers and directors to their corporations' shareholders outweighs any duty they might owe to the corporations' contract creditors. See *Swager*, 77 Ill. 2d at 191.

The defendants in this case are hospital management companies. Hospital management companies play a role that is analogous to that played by corporate officers and directors in the management of their corporations. Like corporate officers and directors, hospital management companies owe a duty to their hospitals to exercise business judgment in managing their hospitals' affairs. In particular, hospital management companies must exercise their discretion for the benefit of their hospitals in choosing when, and to which creditors, payments should be made to satisfy the hospitals' debts. As with corporate officers' and directors' duty to their shareholders, we deem that the duty owed by hospital management

companies to their hospitals should take precedence over their duty to the hospitals' contract creditors. We therefore find that Hospital Management's and National Medical's conduct in this case was privileged.

Having determined that the management companies' conduct here was privileged, we must now determine if counts IV and VI of HPI's complaint sufficiently allege that the conduct was unjustified. To properly state a cause of action for intentional interference with contractual rights, a plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. Instead, the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified. (See *Arlington Heights*, 37 Ill. 2d at 551 ("A further requirement of a legally sufficient complaint is that it set forth factual allegations from which actual malice [*i.e.*, lack of justification] may reasonably be said to exist as opposed to the bare assertion of actual malice").) We require that plaintiffs specifically plead a lack of justification, in part, to prevent the inevitable chilling effect that would occur if management companies could be subject to litigation every time they exercised their business discretion in deciding to pay one creditor over another. A defendant who is protected by a privilege, however, is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege. (See *Arlington Heights*, 37 Ill. 2d at 551; *Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 401; *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 235.) For example, a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such

conduct would not have been done to further the hospital's interests. (See *Certified Mechanical Contractors*, 162 Ill. App. 3d at 401.) A defendant who is protected by a privilege is also unjustified in using illegal means to induce a breach of contract. See *Prudential Insurance Co. v. Van Matre* (1987), 158 Ill. App. 3d 298, 306.

Counts IV and VI of HPI's complaint merely allege that the management companies were aware of the pharmaceutical services agreement between HPI and Mt. Vernon; that the management companies had managerial service agreements with Mt. Vernon whereby the companies were obligated to pay the hospital's creditors from Mt. Vernon's bank accounts; that the management companies "knowingly and intentionally" paid some creditors, but not HPI; and that the decisions not to pay HPI were done "without legal justification and knowingly in violation of [HPI's] contractual right to said compensation." Thus, the facts as alleged in counts IV and VI establish that Hospital Management and National Medical performed the duties required of them under their contracts with Mt. Vernon. There are no allegations that their decisions not to pay HPI were illegal, contrary to the interests of Mt. Vernon, motivated by a desire for personal gain, or intended to harm HPI. The sole allegations regarding a lack of justification are the bare conclusory statements in each count that the management companies' actions were done "without sufficient legal justification." Such conclusory statements, without supporting factual allegations, are clearly insufficient to state a cause of action for intentional interference with contractual rights. See *Arlington Heights*, 37 Ill. 2d at 551; *Schott*, 109 Ill. App. 3d at 235; *Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 608; *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 758.

HPI argues that allegations in count VIII, that the management companies conspired to defraud HPI, set

forth sufficient facts to support an inference that their conduct was intended to harm HPI. However, as this court stated in *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 472, "[e]ach count of a complaint is ordinarily a separate statement of claim and its sufficiency is to be determined by its content, including material appearing elsewhere but specifically incorporated therein by reference." None of the allegations from count VIII were incorporated into counts IV and VI, and consequently should not be considered in assessing whether those counts stated a cause of action for intentional interference with contractual relations. Accordingly, we conclude that the circuit court was correct in dismissing counts IV and VI of HPI's complaint for failure to state a cause of action.

We turn now to the circuit court's dismissal of count VII of HPI's complaint, which seeks to recover damages from Centerre based upon an unjust-enrichment theory. The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of *assumpsit* and restitution or quasi-contract. (See 1 G. Palmer, The Law of Restitution §1.1, at 2-4 (1978).) To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. See *Drury v. County of Mc-Lean* (1982), 89 Ill. 2d 417, 425-26; *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10, 12.

The allegations of count VII of HPI's complaint are that: (1) Centerre was the trustee of certain bonds which had been issued to finance the acquisition, renovation and conversion of the combined hospital/nursing-home facility which was leased by Mt. Vernon; (2) Mt. Vernon was con-

tractually obligated through an "Indenture and Financing Agreement" to remit all rental payments for the use of the hospital/nursing-home facility directly to Centerre; (3) pursuant to the pharmaceutical services agreement, HPI provided "essential pharmaceutical goods and services to Mt. Vernon Hospital, without which said hospital could not operate"; (4) Centerre requested that Michael Alexander assume the positions of president of the board of and trustee on Mt. Vernon's board of trustees, and "Alexander accepted said positions thereby becoming the agent of Centerre"; (5) Centerre, "through its agent Michael A. Alexander," caused Mt. Vernon to stay open to convert HPI's goods and services into revenues needed by Mt. Vernon to make rental payments to Centerre; (6) Centerre requested that Mt. Vernon make its rental payments to Centerre rather than make its payments to HPI for its provision of pharmaceutical goods and services; (7) Centerre controlled all payments made to creditors by Mt. Vernon and prevented the making of payments to HPI; and (8) Centerre's conduct resulted in Centerre's being unjustly enriched in an amount equal to the amount owed to HPI by Mt. Vernon.

Many unjust-enrichment cases involve "situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant." (4 G. Palmer, The Law of Restitution §21.1, at 291 (1978).) The situation in this case, however, is different in that the plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party. In such situations, courts have found that retention of the benefit would be unjust where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead (see, *e.g., Hamilton Glass Co. v. Shaffer* (1957), 12 Ill. App. 2d 407, 409), (2) the defendant procured the benefit from the third party through some type of wrongful conduct (see, *e.g.,*

*Harper v. Adametz* (1955), 142 Conn. 218, 225-26, 113 A.2d 136, 139), or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant (see, *e.g., Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 176-77). See generally 4 G. Palmer, The Law of Restitution §§21.2, 21.4, 21.5, at 292-93, 298-99, 316-18 (1978).

HPI failed to allege that Mt. Vernon intended to pay HPI, but instead mistakenly paid Centerre. Thus, to state a cause of action under an unjust-enrichment theory, HPI was required to set out specific factual allegations which would support the conclusion that Centerre's conduct in procuring the payments from Mt. Vernon was wrongful, or that HPI's claim to the payments is superior to that of Centerre.

Centerre argues that count VII fails to state a cause of action because the allegations regarding Alexander's agency status, and Centerre's wrongful conduct, are merely conclusory. Count VII's allegations regarding Centerre's conduct in this case are: that Centerre "requested" that Mt. Vernon pay Centerre rather than HPI and "requested" that Michael Alexander become president of and trustee on Mt. Vernon's board of trustees; that "Centerre, through its agent Michael A. Alexander, caused Mt. Vernon Hospital to stay open"; and that "Centerre controlled directly and indirectly all payments made to creditors by *** Mt. Vernon Hospital and prevented payments to [HPI]." Thus, HPI alleges that Centerre, both through its agent and on its own, engaged in wrongful conduct in procuring payment from Mt. Vernon.

The appellate court found that HPI's allegations regarding Centerre's conduct, taken as a whole, created a "reasonable inference *** that the relationship between Centerre and Alexander was indeed that of principal and agent." (172 Ill. App. 3d at 732-33.) The appellate court further stated that even if it "were to agree with Cen-

terre that plaintiff's allegations of agency were insufficient," it would still have reversed the circuit court's dismissal of count VII because there were sufficient allegations that Centerre itself engaged in wrongful conduct. (172 Ill. App. 3d at 733.) We disagree.

The appellate court relied upon the principle "that the existence and extent of an agency relationship may be established by circumstantial evidence based upon an examination of the situation of the parties, their acts, and other relevant circumstances." (172 Ill. App. 3d at 732.) This principle, however, does not free the plaintiff of his obligation to allege specific facts in support of his claim. (See *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57.) What the principle does mean is that a plaintiff can establish the existence of an agency relationship even though the plaintiff cannot directly demonstrate its existence (*e.g.*, by showing that the principal and agent had expressly agreed to the agency). In the absence of such direct proof, the plaintiff may establish the existence of an agency relationship through circumstantial evidence from which it can be inferred that an agency relationship existed. (See *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518.) Nevertheless, the plaintiff must still allege specific facts regarding the circumstances of the situation from which the existence of the relationship can be inferred.

HPI in this case has failed to provide any specific allegations of fact that would give rise to an inference that Alexander was Centerre's agent. The only specific factual allegation regarding Alexander's alleged agency status in count VII is that Centerre requested that Alexander become president of and trustee on Mt. Vernon's board of trustees. However, as the appellate court correctly noted, this allegation alone is insufficient to support the conclusion that Alexander was Centerre's agent. (172 Ill. App. 3d at 732.) All of the other allega-

tions in count VII regarding Centerre's conduct (that Centerre "caused" Mt. Vernon to stay open and "controlled" Mt. Vernon's payments to creditors and "prevented" any payments from being made to HPI) are merely conclusory and do not pertain to Centerre's relationship with Alexander. There are no allegations in the complaint concerning how Centerre "caused," "controlled," or "prevented" Mt. Vernon's actions. We therefore find that HPI's complaint fails to allege sufficient specific facts to support the conclusion that Alexander acted as Centerre's agent. We also find that since HPI failed to make any specific factual allegations regarding Centerre's conduct, HPI has failed to sufficiently allege that Centerre's conduct was wrongful.

We similarly find that HPI's complaint does not establish that HPI's claim to receive payments from Mt. Vernon was for any other reason superior to the claim of Centerre. HPI, during oral argument before this court and in its complaint and briefs, has stressed that it "provided essential pharmaceutical goods and services to Mt. Vernon Hospital, without which said hospital could not operate." Although it is not clear why HPI has stressed this fact, the implication may be that due to the "essential" nature of the goods and services provided by HPI, HPI enjoyed some sort of preferred status over other creditors. This argument, however, has no merit, particularly since Mt. Vernon's use of the hospital/nursing-home facility, for which it paid rent to Centerre, was certainly as "essential" to the operation of the hospital as Mt. Vernon's use of HPI's goods and services. We thus conclude that HPI has failed to sufficiently allege that Centerre's retention of the payments from Mt. Vernon was unjust. Accordingly, the circuit court was correct in dismissing count VII of HPI's complaint.

We finally address the circuit court's dismissal of count VIII of HPI's complaint. Count VIII was directed

toward all four defendants and alleged that they intentionally defrauded HPI. The elements of the tort of fraudulent misrepresentation are:

"(1) [a] false statement of material fact; (2) known or believed to be false by the party making it; (3) made to induce the other party to act; (4) action by the other party in [justifiable] reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 288.

HPI's complaint alleged that prior to January 7, 1981, Hospital Management had requested that HPI provide Mt. Vernon with pharmaceutical services, even though Hospital Management knew that Mt. Vernon "had no liquid assets \*\*\* or third-party payment program certification or other means of paying [HPI] for the provision of its goods and services." The complaint then alleged that on January 7, 1981, HPI and Mt. Vernon entered into a pharmaceutical services agreement. The complaint further alleged that beginning January 7, 1981, all four defendants:

"employed a scheme of repeated and numerous knowingly false promises and representations that Mt. Vernon Hospital would, in the future, be able to pay to [HPI] the amounts due and owing under the terms of the pharmaceutical services agreement which scheme was designed to cause, and did cause, [HPI] to continue the provision of essential pharmaceutical goods and services without compensation when defendants knew, or should have known, that Mt. Vernon Hospital did not, and would not in the future, have the assets to pay to [HPI] the amounts due and owing under the pharmaceutical services agreement."

The complaint then set forth the following 11 "knowingly false promises" which "each" of the four defendants allegedly made as part of their alleged scheme:

"(a) On or about July 28, 1981, Mt. Vernon Hospital, through its agents and employees, represented to [HPI] that loans were being obtained, secured by Mt. Vernon Hospital's receivables, in order to pay contractors and creditors, including [HPI].

(b) On or about October 20, 1981, defendants Mt. Vernon Hospital and Centerre caused a press release to be sent to [HPI] acknowledging that it had 'built up substantial debts to our suppliers', including [HPI], and further representing that '[w]ith Medicare reimbursement we will be able to pay all suppliers for current services, and will begin to pay all outstanding balances as soon as practicable.'

(c) On or about November 10, 1981, defendants Mt. Vernon Hospital and Centerre caused a letter to be sent to [HPI] promising 'to pay all new invoices on a current basis' and asking [HPI] 'to work with us and give the hospital management sufficient time to ... solve our cash problem.'

(d) On or about November 10, 1981, defendant Mt. Vernon Hospital, through its agent Ronald Scott Magnum, the President of its Board of Directors, advised [HPI] via telephone that defendants wished to discuss the past due debt and the current outstanding amount in order to implement a payment plan.

(e) On or about August 22, 1982, defendants Mt. Vernon Hospital, National Medical, and Centerre caused an article to be published in the local newspaper captioned 'Hospital Names California Firm to Run Facility' wherein the defendants, through Michael Alexander, acknowledged that Mt. Vernon Hospital had accumulated significant debt, but stated that the hospital's cash flow and finances were rebuilt and that it would only be a matter of time before leftover financial problems, including payment of the amount owed to [HPI], would be resolved.

(f) On or about December 10, 1982, Antonio Maienza, hospital administrator and agent and employee of National Medical, met with [HPI] on behalf of defendants, acknowledged the fact that Mt. Vernon owed significant

amounts to [HPI] pursuant to the pharmaceutical services agreement, represented that Mt. Vernon Hospital would begin making payments, and discussed with [HPI] making a good-faith payment on the past due amount plus making current payments.

(g) On or about January 17, 1983, Antonio Maienza, acting on behalf of defendants Mt. Vernon Hospital and National Medical, spoke with [HPI] via telephone and represented that he would like to discuss the implementation of a payment plan to reduce the amounts due and owing to [HPI] by Mt. Vernon Hospital under the pharmaceutical services agreement.

(h) On or about January 28, 1983, defendants Mt. Vernon Hospital, National Medical and Centerre, through their agents at a Board of Trustees meeting, secretly decided to terminate the pharmaceutical services agreement with [HPI] while, at the same time, representing to [HPI] that it wished to negotiate a settlement of the monies owed to [HPI] by Mt. Vernon Hospital and to discuss a solution to the current contract.

(i) On or about February 3, 1983, Antonio Maienza again met with [HPI], concealed the fact that the hospital intended to terminate the contract, and offered to pay a portion of the amount due and owing and to make monthly payments of the past due amounts at such time as Mt. Vernon Hospital's financial situation was stabilized.

(j) On or about February 18, 1983, a telephone call was made by Michael Alexander, on behalf of defendants Mt. Vernon Hospital and Centerre, to [HPI] and, again, [HPI] was advised about being paid the amounts which were due and owing under the terms of the pharmaceutical services agreement.

(k) On or about April 5, 1983, Michael Alexander, on behalf of defendants Mt. Vernon Hospital and Centerre, advised [HPI] via telephone that Mt. Vernon Hospital's board of trustees was going to meet and vote on a plan for payment of the amounts due and owing to [HPI] by Mt. Vernon Hospital under the terms of the pharmaceutical services agreement, requested that [HPI] continue to

provide essential pharmaceutical goods and services, and promised that Mt. Vernon Hospital would begin to make current payments to [HPI] when due."

HPI finally alleges that it had a right to rely upon defendants' representations.

Hospital Management, National Medical and Centerre each argue that the complaint is deficient because it fails to allege any misrepresentations of existing fact. Instead, Hospital Management, National Medical and Centerre characterize the allegedly fraudulent misrepresentations as promises to perform future acts, which, appellants note, generally do not constitute fraud. See *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334.

While it is true that misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud (see *Steinberg*, 69 Ill. 2d at 334; *Roda v. Berko* (1948), 401 Ill. 335, 340), this court has recognized an exception to this rule. Under this exception, such promises are actionable if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (*Steinberg*, 69 Ill. 2d at 334; see also *Roda*, 401 Ill. at 340.) HPI argues, and the appellate court agreed (172 Ill. App. 3d at 737), that count VIII of the complaint falls within this exception to the general rule because it alleges that Mt. Vernon, Hospital Management, National Medical and Centerre were engaged in a scheme to defraud HPI. As we will explain, while we agree that the complaint sufficiently alleges that National Medical and Centerre participated in a scheme to defraud HPI, we find that the complaint fails to state a cause of action against Hospital Management.

As is apparent from the above-quoted excerpts of HPI's complaint, count VIII sets forth a number of specific factual allegations in support of its conclusion that

defendants "employed a scheme of repeated and numerous knowingly false promises and representations." The scheme alleged in count VIII of the complaint consisted of repeatedly making false promises of future payment in order to induce HPI to continue provision of pharmaceutical goods and services. We find that these allegations present a case "where the false promise[s] or representation[s] of intention or of future conduct [were] the scheme or device to accomplish the [alleged] fraud." (*Roda*, 401 Ill. at 340.) We therefore conclude that count VIII of HPI's complaint falls within the exception recognized by this court in *Steinberg* and *Roda*. See *Steinberg*, 69 Ill. 2d at 334; *Roda*, 401 Ill. at 340.

Nevertheless, Centerre offers the additional argument that the complaint is insufficient because it fails to identify which of its "agents" made the allegedly fraudulent misrepresentations. However, it has long been the law in Illinois that where, as here, a plaintiff specifically alleges that a corporation has committed a tort, the plaintiff need not allege that the tort was committed by acts of the corporation's agents. (See *Libby, McNeill & Libby v. Scherman* (1893), 146 Ill. 540, 548.) Unlike count VII, which consists entirely of conclusory allegations regarding Centerre's conduct and therefore necessitates allegations to support an inference of agency, count VIII contains a number of specific factual allegations regarding Centerre's and National Medical's participation in the alleged scheme to defraud HPI. Accordingly, there is no need for HPI to allege which agents of Centerre or National Medical perpetrated the alleged fraud.

Count VIII of the complaint, however, does fail to provide any specific factual allegations in support of HPI's claim that Hospital Management participated in the fraudulent scheme. The only specific allegation regarding Hospital Management is that prior to January 7,

1981, Hospital Management "requested" that HPI furnish pharmaceutical goods and services for Mt. Vernon, even though Hospital Management knew that Mt. Vernon would not be able to pay HPI in the future. However, according to the complaint, the alleged fraudulent scheme did not begin until January 7, 1981. Thus, Hospital Management's "request" to HPI, which occurred prior to January 7, 1981, could not have been part of the alleged scheme. Furthermore, none of the 11 specific factual allegations regarding the alleged scheme mentioned Hospital Management; the allegations are all directed toward Mt. Vernon, National Medical, and Centerre. Accordingly, we find that the circuit court was correct in dismissing count VIII of the complaint as it pertains to Hospital Management.

Centerre and National Medical further argue that even though the complaint sufficiently alleges a scheme to defraud, the complaint still fails to state a cause of action because it does not sufficiently allege that HPI's reliance on the misrepresentations was justified. They argue that the complaint makes clear that HPI must have known that Mt. Vernon was having serious financial difficulties and so could not have justifiably relied upon any representations that HPI would be paid in the future, particularly since HPI supplied Mt. Vernon with pharmaceutical goods and services for over two years without being paid. We do not agree.

We recently stated the well-established rule that "one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover the truth as the person making the representations." (*Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 195.) HPI alleges facts that indicate that Centerre and National Medical were intimately connected with the management of Mt.

Vernon's financial affairs. Nothing in the complaint indicates that HPI shared this intimate knowledge of Mt. Vernon's finances. These allegations, which we must accept as true, create the inference that both Centerre and National Medical were better able than HPI to discover the truth of their representations. Accordingly, we find that HPI has sufficiently alleged that its reliance was justified. We therefore conclude that count VIII of HPI's complaint states a cause of action for fraudulent misrepresentation against National Medical and Centerre.

For the foregoing reasons, in No. 67594 the appellate court's judgment is reversed and the circuit court's judgment, dismissing counts IV and VIII as to Hospital Management, is affirmed. In Nos. 67617 and 67630, as to Centerre and National Medical, respectively, the appellate court's judgment is reversed as to counts VI and VII and affirmed as to count VIII, and the circuit court's judgment is affirmed as to its dismissal of counts VI and VII and reversed as to its dismissal of count VIII. The cause is remanded to the circuit court of Jefferson County for further proceedings not inconsistent with this opinion.

*No. 67594 — Appellate court judgment*
*reversed; circuit court judgment affirmed.*
*Nos. 67617, 67630 — Appellate court judgment*
*affirmed in part and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part; cause remanded.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.