*In re* ESTATE OF BEN ALBERGO, Deceased (St. Therese Medical Center, Plaintiff-Appellant, v. DeWayne Hull, d/b/a Informed Patients, *et al.*, Defendants-Appellees).

Second District   No. 2—94—1277

Opinion filed September 25, 1995.

Dennis A. Brebner, of Robinson & Brebner, of Lake Bluff, for appellant.

Stephen G. Applehans, of Stephen G. Applehans, Chartered, of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, St. Therese Medical Center (Hospital), appeals from a trial court order which granted the motion for summary judgment of defendants, Dr. DeWayne Hull (Dr. Hull), d/b/a Informed Patients; Informed Patients; and Informed Patients, Inc. Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment because there were issues of material fact with respect to each count of its complaint. Plaintiff also contends that the trial court erred in dismissing count III of its complaint because defendants did not oppose count III in their motion for summary judgment and did not raise it in oral arguments.

Informed Patients, Inc., is an Indiana corporation which was incorporated December 28, 1992. Prior to December 28, 1992, a partnership existed and engaged in business under the name Informed Patients. For purposes of this appeal, we will refer to both Informed Patients and Informed Patients, Inc., as Informed Patients. Dr. Hull is an employee of Informed Patients. His title is "Director of Review and Analysis."

This case concerns an unpaid balance on a hospital bill. The patient's estate and insurer refused to pay the balance of the bill based, allegedly, upon their consideration of a report from Informed Patients that its evaluation disclosed that the charges were excessive. The hospital now seeks to hold Dr. Hull and Informed Patients liable for providing information which allegedly induced the patient's estate and insurer to refuse payment of the disputed charges.

Ben Albergo (Albergo) was a patient at the hospital during January and February 1992. Albergo died on February 14, 1992. Plaintiff subsequently issued a bill for Albergo's hospitalization in the amount of $60,594.68. Albergo's medical insurer, the Midwest Operating Engineers Fringe Benefit Fund (Fund), paid $42,589.83 of the bill, leaving an unpaid balance of $18,004.85.

Plaintiff initially filed a claim for the unpaid balance against Albergo's estate. The estate responded by denying that it owed the unpaid balance because the charges claimed by plaintiff were "duplicative, inappropriate and/or excessive."

Attached to the estate's response to plaintiff's claim were two letters from the Fund. Both letters were dated March 12, 1992. One of the letters, signed by the Fund's administrative manager, Larry W.

Bushmaker, was addressed to plaintiff and advised plaintiff that the Fund had retained the services of Informed Patients to review plaintiff's charges for Albergo's hospitalization. The letter stated that the review included, but was not limited to, checking for: duplicate billing, inappropriate billing, and excessive billing. The letter further stated that the review of the charges resulted in a determination that the enclosed payment of $42,589.83 was submitted in full payment of the charges and that Albergo therefore did not owe anything else to plaintiff. The letter advised plaintiff to direct inquiries concerning the details of the review to Informed Patients.

The second letter, signed by a case manager, was addressed to Albergo. The letter stated that the Fund had found excessive charges on many inpatient hospital stays and had therefore retained Informed Patients to assist the Fund in determining the "reasonableness" of plaintiff's charges for Albergo's hospitalization. The letter stated that Informed Patients had advised the Fund that plaintiff's charges "appeared to exceed the reasonable cost" by an amount of $18,004.85 and that the Fund had therefore made a payment to plaintiff of $42,589.83. The letter stated that Albergo owed plaintiff nothing else and that Albergo should not pay plaintiff anything else.

On May 24, 1993, the court in which Albergo's estate was being probated granted plaintiff leave to file an action against additional defendants. On the same date, plaintiff filed a two-count complaint against defendants. Count I of the complaint alleged tortious interference with a contract. Count II alleged deceptive business practices.

Defendants filed a motion for summary judgment as to counts I and II of plaintiff's complaint. On September 29, 1994, the trial court entered an order granting defendants' motion for summary judgment and dismissing "both causes of action." The order stated that "this case is dismissed, this being a final order," and contained language referring to the order as "final and appealable." Plaintiff filed a timely notice of appeal from the order.

JURISDICTION

Before addressing the merits of this case, we must first resolve a motion taken with the case and a related issue. On November 18, 1994, defendants filed a motion with this court to dismiss the appeal for lack of jurisdiction. The motion was ordered taken with the case.

Defendants contend in their motion that Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) is the applicable rule as to jurisdiction in this case because the trial court's grant of summary judgment did not dispose of the entire proceeding pending before the trial court.

Defendants argue that this court does not have jurisdiction under Rule 304(a) because the trial court did not make the express written finding necessary for jurisdiction under Rule 304(a).

Plaintiff responds that this court has jurisdiction under several supreme court rules. First, plaintiff maintains there is jurisdiction under Supreme Court Rule 303 (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303, eff. February 1, 1994) because the order appealed from was a final order which disposed of the entire proceeding between plaintiff and defendants. Alternatively, plaintiff contends that we have jurisdiction under Rule 304(a) because the trial court's language that the order was "final and appealable" was sufficient for jurisdiction under that rule, or that we have jurisdiction under Supreme Court Rule 304(b)(1) (155 Ill. 2d R. 304(b)(1)).

Before resolving the jurisdictional question, we must address a related issue. The related issue is whether the September 29, 1994, order, the order from which plaintiff appeals, was a final order. In order to resolve this issue, we must determine whether plaintiff filed an amended complaint containing three counts.

Plaintiff asserts that its first amended complaint contained three counts with count III sounding in business and trade libel. Plaintiff argues that the trial court erred in granting summary judgment in favor of defendants as to count III because defendants did not raise count III in their motion for summary judgment or in oral arguments. In other words, plaintiff contends that the trial court did not dispose of count III. If undisposed of, count III could affect our jurisdiction because the trial court's order would not have disposed of all the issues as to plaintiff and defendants, and therefore the order would not be a final order upon which the cause was properly dismissed. See *Alliance Syndicate, Inc. v. Brad Foote Gear Works, Inc.* (1993), 244 Ill. App. 3d 737, 741 (appellate court did not have jurisdiction where purported final order did not dispose of all issues notwithstanding appealability language).

Defendants respond that plaintiff's assertions regarding count III are not grounded in fact. Defendants maintain that the only complaint plaintiff filed in the trial court was its original complaint containing the two counts for tortious interference with contract and for deceptive business practices.

Along with its response to defendants' motion in this court to dismiss the appeal, plaintiff attached a supporting record pursuant to Supreme Court Rule 328 (155 Ill. 2d R. 328). The supporting record contained a document entitled "First Amended Complaint at

Law" (amended complaint). The amended complaint contained three counts, with count III sounding in business libel.

Plaintiff also filed a motion with this court on January 25, 1995, to supplement the record on appeal pursuant to Supreme Court Rule 329 (134 Ill. 2d R. 329). The motion stated that, in reviewing the appeal record prepared by the clerk of the circuit court, plaintiff's counsel discovered that there were omissions in the record. The motion stated that there were two omissions: the amended complaint and plaintiff's response to the motion for summary judgment.

This court granted plaintiff's motion to supplement the appeal record pursuant to Rule 329. Rule 329 provides that a party may supplement the record on appeal to include omissions, correct errors, and settle controversies as to whether the record accurately reflects what occurred in the trial court. (*Deason v. Gutzler* (1993), 251 Ill. App. 3d 630, 631.) However, Rule 329 allows supplementation only with documents which were actually before the trial court. *Deason*, 251 Ill. App. 3d at 631.

■ In this case, plaintiff has not shown that the amended complaint was actually before the trial court. None of the copies of the amended complaint submitted by plaintiff bears a stamp showing the amended complaint was filed in the trial court. Moreover, the trial court order granting defendants' motion for summary judgment and dismissing the case refers to "both causes of action," implying that only the two causes of action in the original complaint were before the trial court. Finally, plaintiff itself refers to a two-count complaint in its response to defendants' motion for summary judgment. The response specifies that the two counts in the complaint were a count for tortious interference with contract and deceptive business practices. Based on this record, we conclude that the amended complaint containing count III was not before the trial court.

Because the amended complaint and count III were not before the trial court, we will not consider them in this appeal. To the extent that we granted plaintiff's motion to supplement the record on appeal with the amended complaint, we now vacate the order allowing plaintiff to supplement the record on appeal.

Because count III was not before the trial court, it has no effect on our resolution of the jurisdictional issue. We return now to that issue.

■ We conclude that we have jurisdiction in this case under Rule 304(b)(1). Rule 304(b)(1) provides as follows:

> "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." 155 Ill. 2d R. 304(b)(1).

The trial court order entered September 29, 1994, granting defendants' motion for summary judgment, finally determined the rights of plaintiff with respect to defendants. This order was entered by the same court which was administering Albergo's estate. Thus, the order was appealable under Rule 304(b)(1) because it was entered in the administration of an estate and finally determined the rights of a party.

MERITS OF APPEAL

■ The primary issue before this court is whether the trial court properly granted summary judgment in favor of defendants. Our supreme court recently reiterated the principles guiding us in determining whether a grant of summary judgment is proper. The court stated:

"As in all cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) Specifically, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and must construe them strictly against the movant and liberally in favor of the nonmoving party. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11; *Outboard*, 154 Ill. 2d at 131-32.) Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. (*Hoover*, 155 Ill. 2d at 410; *Outboard*, 154 Ill. 2d at 102.) Although summary judgment is encouraged to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. (*Hoover*, 155 Ill. 2d at 410; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Hoover*, 155 Ill. 2d at 411; *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.* (1995), 165 Ill. 2d 107, 113-14.

With these principles in mind, we will first determine whether the trial court erred when it entered summary judgment with respect to plaintiff's tortious interference with contract claim. Plaintiff contends that the trial court erred in granting summary judgment as to the tortious interference with contract claim because material issues of fact existed.

■ In Illinois, it is generally recognized that the elements necessary to state a cause of action for tortious interference with an existing contract are:

> " ' "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." ' " *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 154-55, quoting *Prudential Insurance Co. v. Van Matre* (1987), 158 Ill. App. 3d 298, 304, quoting *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551.

If a plaintiff fails to establish an element of the cause of action, then summary judgment for the defendant is proper. (*Espinoza*, 165 Ill. 2d at 114.) In this case, plaintiff contends there are issues of material fact regarding whether defendants intentionally and unjustifiably induced a breach of contract between plaintiff and Albergo in the form of the Fund not paying Albergo's entire hospital bill. Plaintiff argues that there is a question of fact as to whether defendants used an appropriate standard in determining if the charges in Albergo's bill were reasonable. Plaintiff also contends that defendants improperly profited from the advice they gave the Fund.

Defendants respond that plaintiff has failed to show that defendants induced the Fund to breach the contract requiring full payment of Albergo's bill. We agree.

Establishing inducement, in the context of a claim for tortious interference with a contract, "requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." M. Polelle & B. Ottley, Illinois Tort Law, at 334 (1985), citing *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.* (1991), 214 Ill. App. 3d 1073, 1081 (no inducement absent showing competitor actively solicited plaintiff's business); *Upton v. Parkway Motors, Inc.* (1967), 90 Ill. App. 2d 426, 430 (merely implanting idea to bring suit to rescind contract did not constitute inducement).

■ In this case, plaintiff has failed to show that defendants actively persuaded the Fund not to make a full payment of Albergo's bill. Bushmaker, the Fund's administrative manager, stated in his uncontroverted affidavit that he made an independent determination of whether to pay Albergo's entire bill after consulting defendants for a determination of the reasonableness of the charges on the bill. Plaintiff has not cited anything, nor has our search revealed anything, in the record showing that defendants actively persuaded,

encouraged, or incited the Fund not to pay the entire bill. Thus, plaintiff has not shown that defendants induced the breach of contract. The trial court was therefore correct in entering summary judgment on count I of plaintiff's complaint.

There is another reason why the trial court was correct. Even if plaintiff had shown that defendants induced the Fund to breach the contract, defendants' conduct was conditionally privileged and therefore did not constitute improper interference with the contract.

The purpose of imposing tort liability upon persons who interfere with the contractual relations of others is to protect interests in contractual relations against forms of interference which, on balance, the law finds repugnant. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190.) However, courts recognize a privilege if the defendant acted to protect an interest which the law considers to be of equal or greater value than the plaintiff's contractual right. *HPI*, 131 Ill. 2d at 157.

The giving of honest advice within the scope of a request for the advice is conditionally privileged and therefore does not constitute improper interference with a contract. (See *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 249-50; Restatement (Second) of Torts § 772, at 50 (1979).) The only requirements for the existence of this privilege are that the advice: (1) be requested; (2) be within the scope of the request; and (3) be honest; and "it is immaterial that the actor also profits by the advice." Restatement (Second) of Torts § 772, Comment c, at 50-51 (1979).

To overcome a conditional privilege, such as the giving of honest advice upon request, a plaintiff must establish that a defendant's actions were unjustified (*HPI*, 131 Ill. 2d at 158) or were done with actual malice (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551). To establish that a defendant's conduct was unjustified, a plaintiff must set forth factual allegations from which it can be reasonably inferred that the defendant's conduct was unjustified. (*HPI*, 131 Ill. 2d at 158.) To establish actual malice, a plaintiff must show more than ill-will. The plaintiff must show that the defendant acted with a desire to harm the plaintiff which was unrelated to "a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest." *Arlington Heights*, 37 Ill. 2d at 551.

In this case, plaintiff has not established that defendant's actions were either unjustified or done with actual malice. As to the actual malice, the record is devoid of any factual allegations tending to show that defendants acted with a desire to harm plaintiff which was unrelated to the giving of advice upon the Fund's request.

As to whether defendants' actions were unjustified, plaintiff essentially argues that defendants' actions were unjustified because they were motivated by defendants' own financial interests. However, under the above-mentioned principles, it is immaterial whether an actor who is protected by a conditional privilege to give honest advice also profits by the advice. (Restatement (Second) of Torts § 772, Comment *c*, at 50-51 (1979).) Under plaintiff's view, any paid consultant whose advice was relied on by another who breached a contract would not be protected by a conditional privilege. However, consultants hired to render professional judgments should be protected by a conditional privilege to report their findings honestly and candidly without exposing themselves to liability for tortious interference with a contract. *Genelco, Inc. v. Bowers* (1989), 181 Ill. App. 3d 1, 8.

Our review of the record fails to disclose any facts showing that defendants acted dishonestly in reporting their findings to the Fund after defendants were asked to review Albergo's hospital bill. Accordingly, we conclude that a conditional privilege protected defendants from liability for the Fund's action in breaching the contract to pay the entire bill.

■ Plaintiff's additional argument that defendants used an improper standard in determining the reasonableness of the billed items does not change our conclusion. Our review of the record, construing it liberally in plaintiff's favor, discloses no evidence that defendants acted in bad faith when they reviewed Albergo's bill at the Fund's request. No more than good faith is required for defendants to be protected by the conditional privilege. Restatement (Second) of Torts § 772, Comment *c*, at 51 (1979).

In summary, we conclude that plaintiff failed to establish that defendants induced the Fund to breach the contract, an element of the tort; in addition, a conditional privilege protected defendants when they advised the Fund regarding Albergo's bill. Accordingly, the trial court did not err when it granted summary judgment in favor of defendants as to plaintiff's claim alleging tortious interference with a contract.

Plaintiff next contends that the trial court erred when it granted summary judgment in defendants' favor with respect to plaintiff's complaint that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)). Section 2 of the Consumer Fraud Act provides, in relevant part, as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresenta-

tion or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

Plaintiff contends that defendants' conduct constituted deceptive practices under the Consumer Fraud Act. To establish a deceptive practice claim under the Consumer Fraud Act, a plaintiff must show: (1) a deceptive act or practice; (2) an intent by defendants that the plaintiff relied on the deception; and (3) that the deception occurred in the course of conduct involving a trade or commerce. (*People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 856.) Where the alleged deception involves two businesses which are not consumers, a deceptive act or practice is actionable under the Consumer Fraud Act if the alleged deception involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.* (1989), 190 Ill. App. 3d 524, 534.

Plaintiff maintains that defendants committed deceptive practices under the Consumer Fraud Act in the course of their review of Albergo's bill. Specifically, plaintiff asserts that defendants claimed they found "duplicative billings, inappropriate charges and unreasonable or excessive charges" when they reviewed Albergo's bill. Plaintiff argues that this claim was deceptive because there were no duplicate billings or inappropriate charges on Albergo's bill. Plaintiff also argues that defendants' review of Albergo's bill was a sham as to the reasonableness of the charges because the review was not conducted in conformity with the Fund's definition of reasonableness or any definition of reasonableness in accordance with Illinois law.

Initially, we note that plaintiff does not cite to the record to support its assertion that defendants claimed that charges on Albergo's bill were duplicative or inappropriate. We have carefully reviewed the record specifically searching for anything supporting plaintiff's allegation that defendants claimed the charges on Albergo's bill were duplicative or inappropriate. Our search has not revealed anything to support plaintiff's assertion.

In his deposition, Dr. Hull defined the terms "duplicate billing" and "inappropriate billing." An example of inappropriate billing would be "something on the line item charge that just was not appropriate to the diagnosis and treatment of a patient." Dr. Hull's review of the bill revealed no duplicate or inappropriate charges.

■ Accordingly, even when construing the record strictly in favor of plaintiff, we conclude that defendants did not claim that there were either duplicate or inappropriate charges on Albergo's bill. Therefore, plaintiff's assertion that there were deceptive practices related to this alleged claim fails.

Next, we turn to plaintiff's allegations that defendants engaged in deceptive practices by not using a proper standard to determine the reasonableness of the charges on Albergo's bill. Plaintiff first asserts that, because defendants did not know of or use the Fund's definition of reasonableness, the determination must have been a sham. In its appeal brief, plaintiff states that "[t]he review that Informed Patients conducted was not a review of the hospital charges as to reasonableness at all, but simply a sham of taking catalog prices, increasing those by approximately 50% and then indicating any charge above that was excessive or unreasonable." Plaintiff then concludes, without explanation, that "[s]uch practice was clearly a deceptive one."

We find plaintiff's logic unconvincing. Plaintiff does not explain why a markup of more than 50% over cost may not be deemed excessive or unreasonable.

Our review of the record failed to reveal any deception as to how defendants arrived at their reasonableness determination with respect to the items on Albergo's bill. According to Dr. Hull's uncontroverted deposition testimony, he developed a database which defendants used to make their determinations regarding the reasonableness of the charges on hospital bills reviewed by defendants. Defendants used the database to review Albergo's bill. For items which the hospital purchased from suppliers, defendants typically arrived at the database entry by averaging the wholesale cost of the item in several catalogs and then marking the average price up by approximately 50%. If a hospital charged a patient an amount greater than the database amount for the item, the charge was deemed excessive by the amount it exceeded the database price.

■ According to Bushmaker's affidavit, the Fund had a consulting agreement with defendants. Under this agreement, defendants upon request by the Fund make recommendations with respect to the reasonableness of a hospital's charges to a Fund member. However, Bushmaker was not obliged to follow defendants' determination. Thus, the Fund treated defendants' determination as an independent determination which it could accept or reject. Under these circumstances, the fact that defendants may not have used the same definition of reasonableness as the Fund is not deceptive.

Plaintiff's argument that its definition of reasonableness is the

correct definition and that defendants should therefore have used that definition does not change our conclusion. Plaintiff bases its view of the proper definition of reasonableness on our opinion in *Victory Memorial Hospital v. Rice* (1986), 143 Ill. App. 3d 621. However, plaintiff's reliance on *Victory Memorial* is misplaced.

Plaintiff is correct that in *Victory Memorial* we held that a hospital may prove the reasonableness of its charges by showing that the charges were the usual and customary charges for the particular hospital and for other hospitals in the area (143 Ill. App. 3d at 624-25). However, we also stated that an assessment of the reasonableness of the hospital's charges "must include consideration *** of the particular hospital's costs, functions and services to make a valid determination" of the reasonableness of the charges. (143 Ill. App. 3d at 625.) We also noted that a defendant was free to attack the reasonableness of the hospital's charges.

Here, Dr. Hull's deposition showed that defendants determined the reasonableness of a hospital's charges by considering cost and also factoring in characteristics of the individual hospital such as location and function in the community. For example, if the hospital is a rural hospital and is the only available medical facility in the area, defendants may determine that higher charges are reasonable. Our opinion in *Victory Memorial* does not preclude such an approach to determining the reasonableness of a hospital's charges.

■ Alternatively, we agree with defendants' argument that the Consumer Fraud Act does not apply in this case because defendants' determination of the reasonableness of plaintiff's charges was an expression of opinion. As a general rule, expressions of opinion do not support an action under the Consumer Fraud Act. (*Sohaey v. Van Cura* (1992), 240 Ill. App. 3d 266, 291.) Our review of the record satisfies us that defendants' determination of the reasonableness of plaintiff's charges to Albergo was an opinion which does not support an action under the Consumer Fraud Act.

For all these reasons, we conclude that there was no issue of material fact precluding the entry of summary judgment for defendants on the deceptive practices claim. Accordingly, the trial court did not err when it entered summary judgment on that claim.

■ Finally, plaintiff contends that the trial court erred in dismissing count III of its complaint alleging business and trade libel. However, we established above that count III was never before the trial court. For that reason, there is no factual basis for plaintiff's contention that the trial court erred in dismissing count III.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.