Edwin E. ELLIS, Plaintiff,

v.

CHICAGO WEST PULLMAN TRANSPORTATION CORPORATION, and Robert E. Smith, Defendants.

No. 94 CV 3651.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 7, 1996.

Bruce M Davey, Lawton & Cates, Madison, WI, Robert Michael Knabe, Chicago, IL, for Edwin E. Ellis.

Mary Louise Kandyba, Chicago, IL, for Chicago West Pullman Transportation Company and Smith.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Edwin E. Ellis, served as executive vice president of defendant Chicago West Pullman Transportation Corporation ("CWPT") and was a member of CWPT's board of directors. Defendant Robert E. Smith was president and chief executive officer of CWPT. Mr. Smith fired Mr. Ellis, who has brought this action for breach of contract and tortious interference with his employment contract. CWPT and Mr. Smith have filed a motion for summary judgment on counts I and II. The motion is denied.

■ The defendants argue that there was no employment contract between Mr. Ellis and CWPT because CWPT failed to deliver the contract to Mr. Ellis after both parties had signed it. Delivery is relevant to the formation of a contract if "the offer specifies actual delivery as an essential part of acceptance of the offer." *Soderstrom v. Rock River Valley Pigeon Club, Inc.,* 122 Ill.App.3d 819, 461 N.E.2d 547, 548, 77 Ill. Dec. 924, 925 (3rd Dist.1984). In this case it is undisputed that in January, 1992, Mr. Smith and Mr. Ellis signed an employment agreement, and the agreement was returned to Mr. Smith to be kept in CWPT's vault in its Chicago office. The defendants argue that the only reasonable inference from this fact is that delivery was a precondition to an enforceable contract. However, they offer no evidence that anyone ever said so. There is accordingly insufficient evidence to find as a matter of law that delivery was an essential part of acceptance.

■ The defendants argue that Mr. Smith informed Mr. Ellis that the employment agreement would only take effect in the event of a hostile takeover. The parties agree that the employment agreement states:

> The term of this Agreement shall begin July 1, 1991 and continue until June 30, 1996 [Initial Term] and shall renew automatically for one year periods [Renewal Periods] unless sooner terminated as hereinafter provided.

The parol evidence rule generally prohibits the consideration of extrinsic evidence of prior or contemporaneous agreements to change the terms of a written contract. *Cox v. Doctor's Associates, Inc.,* 245 Ill.App.3d 186, 613 N.E.2d 1306, 1321, 184 Ill.Dec. 714, 729 (5th Dist.1993). The defendants are correct that an exception to the parol evidence rule exists where the evidence is offered to show that the parties intended the contract to take effect only upon the fulfillment of a condition precedent. *Northern Trust Company v. Brentwood North Nursing and Rehabilitation Center, Inc.,* 225 Ill.App.3d 1039, 588 N.E.2d 467, 470, 167 Ill.Dec. 826, 829 (2nd

Dist.1992); *Davis v. Buchholz*, 101 Ill.App.3d 388, 428 N.E.2d 198, 201, 56 Ill.Dec. 879, 882 (3rd Dist.1981). The fact finder may consider all relevant evidence in determining whether a written contract is the complete agreement of the parties. *Northern Trust Company v. Brentwood North Nursing and Rehabilitation Center, Inc., supra*, 167 Ill. Dec. at 829, 588 N.E.2d at 470. Accordingly, I may consider evidence that the parties agreed that the effectiveness of Mr. Ellis' employment contract was conditional on a hostile takeover of CWPT.

The parties dispute whether a hostile takeover of CWPT was a condition precedent to the existence of Mr. Ellis' employment agreement. Mr. Smith testified in his deposition that the contract was to take effect only in the event of a hostile takeover. Smith Dep., p. 71–73. Regarding Mr. Ellis' understanding of the formation of his employment agreement, the following colloquy occurred during Mr. Smith's deposition:

Q My question to you is do you recall any specific conversation with Mr. Ellis concerning when, if at all, the contract would be effective?

A I am not sure I understand the question. If you are asking me did Mr. Ellis know that these things were only to be pulled out of the vault in the event of a hostile takeover, the answer is absolutely yes. No question about it.

Q On what do you base that?

A He was right there when we had all the conversations. Why else would I call him in and give him a contract when he worked for us since 1985 and didn't have one and do it on a day's notice.

Q What as specifically as you can recall did you say with regard to when, if at all, the contracts would be effective?

A Mr. Looby[1] was told to take the contracts out of the vault and distribute them in the event that there was a hostile takeover.

Smith Dep., pp. 81–82. Mr. Ellis provided deposition testimony that Mr. Smith did not inform him that his employment agreement would only take effect in the event of a hostile takeover of the company. Ellis Dep., p. 140. He further testified at his deposition that the other employees who signed an employment agreement, Messrs. Gregory, Mraz, Looby, or Brokop, never told him that the effectiveness of his employment agreement was conditional upon a hostile takeover of CWPT. Ellis Dep., p. 141. In short, the evidence does not support defendants' contention that Mr. Ellis, or perhaps anyone else, was ever told or understood that a hostile takeover was a precondition to the effectiveness of the signed agreement. The defendants' motion for summary judgment on Mr. Ellis' breach of contract count is therefore denied.

### Tortious Interference

■ The defendants also request summary judgment on Mr. Ellis' claim for tortious interference with a contractual relationship. The elements of this tort are:

(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 676, 137 Ill.Dec. 19, 23 (1989). The defendants argue that Mr. Ellis cannot maintain a cause of action against Mr. Smith for tortiously interfering with his employment contract because Mr. Ellis did not have a valid and enforceable contract with CWPT. As discussed above, those arguments give rise to a question of fact.

The defendants also argue that Mr. Ellis cannot sue Mr. Smith for tortious interference with his contract because Mr. Smith's actions were privileged. Corporate officers such as Mr. Smith have a qualified privilege to interfere with a contractual relationship in certain circumstances. *Chapman v. Crown Glass Corporation*, 197 Ill.App.3d 995, 557

---

1. Larry Looby was a vice president of CWPT and an officer and member of CWPT's board of directors.

N.E.2d 256, 263, 145 Ill.Dec. 486, 493 (1st Dist.1990). However,

> [c]onduct [is] not justified where the interference is solely for the person's own gain or is solely for the purpose of harming the plaintiff since such conduct would not have been done to further the corporation's interests.

*Id.* (emphasis supplied). It is undisputed that in late 1991, a CWPT officer informed Mr. Ellis that Chicago West Pullman Corporation ("CWPC"), CWPT's parent, was having financial difficulties and as a result, CWPC's financer, Central Trust, was considering liquidating its collateral including the stock and assets of CWPT which had been pledged. It appeared to Mr. Ellis that CWPT would most likely be sold.

The parties agree that without informing Mr. Smith, Mr. Ellis prepared and circulated a prospectus to potential purchasers of CWPT, which provided for buying out Mr. Smith for $750,000 and contemplated that Mr. Ellis would become CWPT's president. It is agreed that Mr. Ellis circulated his prospectus to potential purchasers and sources of financing without telling Mr. Smith. In late February or early March, 1992, Mr. Smith learned that Mr. Ellis had prepared the prospectus. Mr. Smith testified in his deposition that after learning of Mr. Ellis' attempt to solicit a buyer without his knowledge, he "was upset by the fact that [he] was stabbed in the back." Smith Dep., p. 94. Mr. Ellis informed Mr. Smith that he believed that Brighton Place was prepared to finance a transaction for the purchase of CWPT, and Mr. Smith agreed to meet with Brighton Place. The parties agree that Mr. Smith asked Mr. Ellis to stop attempting to arrange for the purchase of CWPT, and Mr. Ellis assured him that he would. Mr. Ellis and the defendants also agree that subsequently, Mr. Smith relieved Mr. Ellis of his responsibility for management and oversight.

The following facts are also undisputed. In late March, 1992, Mr. Ellis spoke to John Weld Peck, who was a majority shareholder of CWPC and a member of the boards of directors of CWPT and CWPC. Mr. Ellis told Mr. Peck that he was concerned about Mr. Smith's operation of the railroad and felt that, as a director, he had a responsibility to disclose those concerns. Mr. Ellis and Mr. Peck then held a meeting at which Mr. Ellis made various allegations that Mr. Smith was poorly managing CWPT and its subsidiary railroads and gave Mr. Peck memoranda that Mr. Ellis had prepared on this subject. After this meeting, Mr. Peck telephoned Roger Ach, II, a majority shareholder and the president of CWPC and the chairman of the board of CWPT, to tell him of Mr. Ellis' allegations regarding Mr. Smith. Following this meeting, Mr. Peck, Mr. Ach, and Mr. Smith had conversations regarding Mr. Ellis' statements. At the end of March, 1992, Mr. Smith discharged Mr. Ellis.

At the time of Mr. Ellis' termination, Mr. Smith was in the process of negotiating an exclusive option to purchase CWPT on behalf of a management group. Mr. Smith testified in his deposition that he wanted management to buy the company "as cheaply as we could." Smith Dep., p. 204. An exclusive option to purchase eventually was given to the management group. Ultimately, in June, 1992, Central Trust foreclosed on CWPT's stock, and Railco, Inc. purchased the stock.

The evidence gives rise to a question of fact regarding whether Mr. Smith acted solely in his interest by causing CWPT to terminate Mr. Ellis' employment in order to preserve his position at and control of CWPT, reputation, and chance to gain financially by purchasing CWPT cheaply.[2] Accordingly, the defendants' motion for summary judgment on count II of Mr. Ellis' amended complaint is denied.

### Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is denied.

---

2. The defendants additionally argue that CWPT's board of directors upheld Mr. Ellis' termination and I should give weight to this fact. Although as the Seventh Circuit noted in *Rice v. Nova Biomedical Corporation*, 38 F.3d 909, 911 (7th Cir.1994), a tortious interference claim in these circumstances may seen nonsensical, as the court stated, Illinois law allows the claim. *Mittelman v. Witous*, 135 Ill.2d 220, 142 Ill.Dec. 232, 235–36, 246, 552 N.E.2d 973, 976–77 (1989).