NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200166-U

NO. 4-20-0166

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| DAVID S. HASBROUCK SR., Independent Administrator of the Estate of Ginger A. Hasbrouck, Deceased, | ) Appeal from the ) Circuit Court of ) Adams County |
|        Plaintiff-Appellee, | ) No. 18L5 |
|        v. | ) |
| BURLINGTON HEALTHCARE PROVIDERS, INC., a Foreign Corporation, | ) ) |
|        Defendant-Appellant, | ) |
|        and | ) |
| SUNEEL CHAUDRY, M.D.; BLESSING HOSPITAL, an Illinois Corporation; and BLESSING CORPORATE SERVICES, INC., an Illinois Corporation, | ) ) ) |
|        Defendants. | ) Honorable ) Scott Douglas Larson, ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Lacking a right to control the manner in which the *locum tenens* physician treated patients, the nonresident defendant, a healthcare placement recruiting company, could not have reasonably anticipated being sued in Illinois for medical malpractice on a theory of *respondeat superior*, and, therefore, exercising specific jurisdiction over the nonresident defendant would violate due process.

¶ 2   Plaintiff, David S. Hasbrouck Sr., the independent administrator of the estate of Ginger A. Hasbrouck, who is deceased, brought wrongful-death and survival actions against defendant, Burlington Healthcare Providers, Inc., a Wisconsin corporation. See 740 ILCS 180/1 (West 2016); 755 ILCS 5/27-6 (West 2016). Pursuant to section 2-301(a) of the Code of Civil

Procedure (Code) (735 ILCS 5/2-301(a) (West 2018)), defendant moved for a dismissal of the actions on the ground of a lack of personal jurisdiction. The Adams County circuit court denied the motion. We granted a petition by defendant for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2019).

¶ 3        In our *de novo* review (see *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17), we find that defendant never received fair warning that it could be sued in Illinois, on a theory of *respondeat superior*, for the medical malpractice of the physician it had referred to an Illinois hospital. Under Illinois law, defendant would have been liable, on a theory of *respondeat superior*, for the physician's medical malpractice only if defendant had the right to control the manner in which the physician treated patients. Lacking such a right, defendant would have received the impression, from Illinois law, that defendant was in no danger of being sued in Illinois on a theory of *respondeat superior*. This action would contradict that impression. Because exercising specific jurisdiction over defendant would be unfairly surprising, it would offend due process, and we reverse the judgment.

¶ 4                                    I. BACKGROUND

¶ 5                        A. The Counts Directed Against Defendant

¶ 6        Two counts of the complaint are directed against defendant, counts III and IV. Count III, an action for wrongful death, seeks damages for harm that the decedent's death caused to her next of kin. Count IV, a survival action, seeks damages for the pain, suffering, and other harm that the decedent suffered until her death. (The Survival Act (755 ILCS 5/27-6 (West 2016)) abrogates the common law by allowing a cause of action for medical malpractice to survive the patient's death (*Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219, ¶ 49)— thus the term "survival action.")

¶ 7 Except for their descriptions of damages, counts III and IV tell the same story. Suneel Chaudhry, M.D., a physician licensed to practice medicine in Illinois, "was acting as the employee and/or agent of" defendant. On October 31, 2016, Ginger A. Hasbrouck underwent anterior cervical spine surgery at St. John's Hospital, in Springfield, Illinois. The next day, on November 1, 2016, she went to the emergency department at Blessing Hospital, in Quincy, Illinois, where she was seen by Dr. Chaudhry, "acting as the employee and/or agent of" defendant (a phrase that counts III and IV repeat over and over again). According to the emergency department records, Ginger A. Hasbrouck was having difficulty breathing, and her voice was raspy. She was diagnosed with a narrowing of the airway and tachycardia. Dr. Chaudhry, "acting as the employee and/or agent of" defendant, owed Ginger A. Hasbrouck a duty of due care and caution in his medical treatment of her. Dr. Chaudhry, "acting as the employee and/or agent of" defendant, breached that duty by "fail[ing] to protect the airway" of Ginger A. Hasbrouck. As a result, she died.

¶ 8                    B. Defendant's Motion for Dismissal on the

Ground of a Lack of Personal Jurisdiction

¶ 9 Pursuant to section 2-301(a) of the Code (735 ILCS 5/2-301(a) (West 2018)), defendant moved for the dismissal of counts III and IV on the ground of a lack of personal jurisdiction. In support of its motion, defendant submitted an affidavit by Matt Bratz, defendant's owner and president. In his affidavit, Bratz averred substantially as follows.

¶ 10 Defendant is a Wisconsin corporation, and its headquarters and principal place of business are in Elm Grove, Wisconsin. Defendant owns no real or personal property in Illinois. All of defendant's employees are in Wisconsin.

¶ 11 From Wisconsin, defendant runs a healthcare placement recruiting company. More specifically, defendant recruits physicians for either permanent or *locum tenens* placement in

healthcare institutions throughout the United States. (A "*locum tenens*," which is Medieval Latin for "(one) holding a place," is someone "filling an office for a time or temporarily taking the place of another—used especially of a doctor or clergyman." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/locum%20tenens (last visited Oct. 21, 2020)). In 2018, defendant recruited physicians for 88 healthcare institutions throughout the United States. Of those 88 healthcare institutions, 16 were in Illinois.

¶ 12    In 2016, defendant had a *locum tenens* agreement with Blessing Hospital. In this agreement (exhibit No. 1 of Bratz's affidavit), defendant "agree[d] to refer Locum Tenens Physician Candidates for evaluation and final approval by [Blessing Hospital]; to make preliminary reference and licensure checks; to assist in negotiating terms and conditions between candidates and [Blessing Hospital]; and to follow-up with physicians and [Blessing Hospital] through completion of the assignment." For its part, Blessing Hospital agreed to pay the negotiated fees to defendant for the physician's *locum tenens* services. Blessing Hospital was "responsible for verifying hours worked, as recorded by the physician on the weekly timesheet," and defendant would "invoice [Blessing Hospital] on a weekly basis." If Blessing Hospital "decide[d] the physician [was] not suitable for the practice, whether before or after the assignment beg[an], [Blessing Hospital was permitted] to remove the physician and/or cancel any future dates scheduled but [had to] provide [defendant] written documentation as to why the physician was unsuitable." Defendant would "arrange malpractice insurance if neither [Blessing Hospital] nor the locum tenens physician [was] able to so arrange." If Blessing Hospital provided the malpractice insurance, defendant would "reduce its daily fee by the amount of [defendant's] daily insurance premium." Blessing Hospital agreed that, in the event a malpractice claim was made, Blessing

Hospital would "provide [defendant] with a copy of any incident report or documentation as requested by our malpractice insurance carrier."

¶ 13 Defendant referred Dr. Chaudhry to Blessing Hospital as a *locum tenens* physician. Attached to Bratz's affidavit was a document titled "Independent Contractor Statement" and signed by Dr. Chaudry on June 23, 2016. The document reads as follows: "I, Suneel Chaudhry, am reimbursed as an independent contractor. I further agree to abide by the guidelines of the IRS regarding payment of all taxes, FICA, and other payments due the state and federal government as outlined for an independent contractor."

¶ 14 According to Bratz's affidavit, no agent or employee of defendant ever "met with Dr. Chaudhry in Illinois as it relate[d] to his recruitment or placement at Blessing Hospital." No agent or employee of defendant "had knowledge of or acquiesced to any acts of Dr. Chaudry to Ginger A. Hasbrouck regarding his status as an agent or employee of Burlington." Dr. Chaudhry had informed defendant of his schedule and availability to work, and defendant in turn had passed that information on to Blessing Hospital, which, "in its discretion, selected Dr. Chaudhry's shifts." Whenever he put in time at Blessing Hospital, "Dr. Chaudhry was responsible for submitting a timesheet to [defendant] for payment for hours worked at Blessing Hospital," and defendant in turn "relayed Dr. Chaudhry's timesheet(s) to Blessing Hospital for payment." For its recruitment services and its management of Dr. Chaudhry's schedule, defendant "was paid a nominal placement fee for each hour worked by Dr. Chaudhry." Defendant then paid Dr. Chaudhry, "after Blessing Hospital paid [defendant] Dr. Chaudhry's hourly rate and its hourly placement fee."

¶ 15 The affidavit concluded: "[Defendant] had no control over Dr. Chaudhry at any time, including, but not limited to, when Dr. Chaudhry was rendering medical care and treatment at Blessing Hospital."

¶ 16               C. Plaintiff's Response to Defendant's Motion for Dismissal

¶ 17          In his response to defendant's motion for dismissal, plaintiff asserted the following additional facts. Defendant provided Dr. Chaudhry's malpractice insurance and was the first-named insured on the insurance policy. Since 2014, defendant placed 56 physicians at Illinois hospitals and medical groups. Each year, defendant "directed [six] large-scale email correspondences to Illinois physicians[,] soliciting them for placement." Defendant's president traveled to Illinois for business reasons. Defendant "charged Blessing [Hospital] $25,000 for each physician it placed at Blessing [Hospital]." Defendant "placed Dr. Chaudhry at Blessing [Hospital] and assisted with credentialing him."

¶ 18          Nevertheless, in its response, plaintiff expressly disavowed relying on a theory of general as opposed to specific jurisdiction. Plaintiff wrote: "Plaintiff does not argue that general jurisdiction should apply here." See *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶¶ 77-78 (explaining the difference between general and specific jurisdiction).

¶ 19                        D. Defendant's Reply

¶ 20          In its reply, defendant took note that, under *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 60 (2001), " '[a] court [might] make a preliminary inquiry into whether the complaint states a cause of action against a defendant who contests [personal] jurisdiction[,] to insure that acts or omissions that form the basis of a cause of action that is patently without merit will not serve to confer jurisdiction.' " Defendant contended that counts III and IV failed this preliminary test because not only did they fail to plead an agency relationship between Dr. Chaudhry and defendant, but Bratz's affidavit, with its attached independent-contractor agreement, affirmatively negated such an agency relationship. (In addition, defendant submitted a second affidavit by Bratz,

in which he represented that defendant had received only $30 an hour for the work Dr. Chaudhry had performed at Blessing Hospital, not "a $25,000 fee.")

¶ 21                                    E. The Circuit Court's Ruling

¶ 22          Citing many of the foregoing facts as "minimum contacts" between defendant and Illinois (*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), the circuit court found that plaintiff had "made a *prima facie* case of specific jurisdiction over the defendant." Further, the court found that defendant had "failed to demonstrate that personal jurisdiction by Illinois [was] unreasonable."

¶ 23                                    II. ANALYSIS

¶ 24          Plaintiff contends that the circuit court has specific jurisdiction over defendant. "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell v. SNFA*, 2013 IL 113909, ¶ 40. For an exercise of specific jurisdiction to be fair and consistent with due process, the nonresident defendant had to be able to "reasonably anticipate" (internal quotation marks omitted) (*id.* ¶ 42)—or, in other words, the defendant had to receive "fair warning" (internal quotation marks omitted) (*Morris v. Halsey Enterprises Co., Ltd.*, 379 Ill. App. 3d 574, 580 (2008))—that the activities the defendant directed at the forum state could result in the defendant's being haled into court there (*Russell*, 2013 IL 113909, ¶ 42; *Morris*, 379 Ill. App. 3d at 580). Thus, in this *respondeat superior* case against defendant, the exercise of specific jurisdiction would comport with "traditional notions of fair play and substantial justice" (internal quotation marks omitted) (*Morris*, 379 Ill. App. 3d at 579) only if Illinois law had given defendant fair notice, ahead of time, that the activities which defendant directed at Illinois could subject defendant to suit in Illinois on a theory of *respondeat superior*.

¶ 25  "Under the theory of *respondeat superior*, a principal is vicariously liable for the conduct of its agent, but not for the conduct of an independent contractor." *Brettman v. M & G Truck Brokerage, Inc.*, 2019 IL App (2d) 180236, ¶ 31. An agent, unlike an independent contractor, has entered into a relationship in which the principal has a right to control the manner in which the agent performs the work. *Id.* Notwithstanding the conclusory assertions in counts III and IV that Dr. Chaudhry "was acting as the employee and/or agent of" defendant (see *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 163 (1989)), it appears to be undisputed that defendant lacked the right to control the manner in which Dr. Chaudhry treated Ginger A. Hasbrouck. None of the contractual documents purport to confer on defendant the right to control the manner in which Dr. Chaudhry treated patients in Blessing Hospital. Lacking such a right, defendant could not have reasonably anticipated that its referral of Dr. Chaudhry for a *locum tenens* position might result in defendant's being sued in Illinois, on a theory of *respondeat superior*, for Dr. Chaudhry's alleged medical malpractice there. Defendant was not given fair warning by Illinois law, and, therefore, exercising personal jurisdiction over defendant would violate due process. See *Russell*, 2013 IL 113909, ¶ 42; *Morris*, 379 Ill. App. 3d at 580.

¶ 26         III. CONCLUSION

¶ 27  For the foregoing reasons, we reverse the circuit court's judgment.

¶ 28  Reversed.